## WESTERN GULF PETROLEUM CORPO-RATION et al. v. FRAZIER JELKE & CO.

### No. 11413.

Court of Civil Appeals of Texas. Galveston.
June 25, 1942.

Rehearing Denied July 23, 1942.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellants.

Sears, Blades, Moore & Kennerly and Fred W. Moore, all of Houston, for appellee.

GRAVES, Justice.

In a sense, the cause now at bar is a recrudescence of another one formerly here, Frazier Jelke & Co. v. Chapman Minerals Corporation, decided and reported by opinion published in 149 S.W.2d 1101; that is, it likewise involved efforts—through garnishment—by these appellees, constituting a partnership of several members, who owned the same $67,463.38 judgment against O.

R. Seagraves the former suit was based on, to subject two blocks of appellant—Western Gulf Petroleum Corporation's stock—one of 6000 shares of preferred, the other of 78 shares of common—standing upon its books in the name of Mrs. Florence E. Seagraves, wife of O. R. Seagraves, to such judgment they so held against her husband, upon their claim that, although all of such shares were held in the name of Mrs. Seagraves, they constituted in fact the community property of herself and her husband.

After the appellees sued out the garnishment that is here involved, on February 25 of 1939, against the Petroleum Corporation, its co-appellant herein, the Bayport Oil Corporation, about December 22 of 1939, purchased from Mrs. Seagraves and others all the stock the Petroleum Corporation had issued, including, as being the property of Mrs. Seagraves, the 78 and 6000-share blocks here involved, whereupon the Bayport Corporation, as such pendente lite purchaser, was vouched into this litigation.

In other words, in the trial court the appellees contended that all this stock constituted community property between Mr. and Mrs. Seagraves, hence was subject to their judgment against him; whereas the appellant-corporations each and both claimed that the stock was in its entirety the separate property of Mrs. Seagraves, had been at all times so held and dealt with between her and them, consequently appellees never at any time had any right to impound any part of it upon their debt against him alone.

The trial court submitted what it deemed to be the material issues raised by the pleadings and evidence over such ownership to a jury in special issues; the two inquiries most directly seeking to elicit the facts upon such ownership, as applied separately to the two blocks of stock in issue, together with the jury's answers thereto, were these:

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that the property, if any, delivered to the Western Gulf Petroleum Corporation for the issuance of 6,000 shares of its preferred stock to Mrs. Florence E. Seagraves, was community property, as that term is defined in this charge, of O. R. Seagraves and wife, Florence E. Seagraves."

Answer: "Yes".

"Special Issue No. 8.

"Do you find from a preponderance of the evidence that the 78 shares of Western Gulf

Petroleum Corporation common stock, issued to Mrs. Florence E. Seagraves, were paid for out of profits derived from the investment of her separate property, as that term is defined in this charge?"

Answer: "Yes".

On that verdict, the trial court decreed the 78 shares of common stock to be the community property of Mr. and Mrs. Seagraves, and to be subject to the appellees' garnishment; but, disregarding the finding under issue No. 6, that the 6000 shares was community property, decreed that, as to it, the appellants were entitled to a discharge from any liability to the appellees, upon their answers.

Both sides appeal, appellants challenging the court's action in denying them a like decree as to the 78 shares that was accorded them as to the 6000 shares, the appellees, by cross-assignment, contending that there was ample evidence to support the jury's quoted finding to the effect that the 6000 shares were also community property of the husband and wife.

Reduced to its ultimate, the resulting issue of law thus raised here is whether the jury's verdict for the appellees as to both blocks of stock should have been followed, or whether the trial court was not only justified in disregarding it in so far as affected the 6000 shares, but should also have done so as to the 78 shares.

This court, upon a consideration of the extended record, briefs, and arguments, concludes that the solution of the question thus posed for it is found in the jury's answers to the five special issues submitted to it immediately before the two—6 and 8—quoted supra; those five, together with the answers thereto, were these:

"No. 1. Do you find from a preponderance of the evidence that the stock issued to Florence E. Seagraves by the Floboots Corporation was a gift from her daughter, Mrs. Davis?"

Answer: "Yes".

"No. 2. Do you find from a preponderance of the evidence that the stock issued to Florence E. Seagraves by the Greta Oil Corporation was received by her in exchange for stock held by her in the Floboots Corporation?"

Answer: "Yes".

"No. 3. Do you find from a preponderance of the evidence that the stock issued to Florence E. Seagraves by the Barns-

dall Oil Company was received by her in exchange for stock held by her in the Greta Oil Corporation?"

Answer: "Yes".

"No. 4. Do you find from a preponderance of the evidence that the 6000 shares of preferred stock issued by the Western Gulf Petroleum Corporation to Florence E. Seagraves was received by her in exchange for stock held by her in the Barnsdall Oil Company?"

Answer: "Yes".

"No. 5. Do you find from a preponderance of the evidence that the 78 shares of common stock issued to Florence E. Seagraves by the Western Gulf Petroleum Corporation was paid for with the proceeds of the sale of stock issued to her by the Barnsdall Oil Company?"

Answer: "Yes".

■ No attack, as being unsupported by the evidence, has been made by either side against any of these findings, indeed, appellees sought judgment on them all and obtained it as to the 78 shares, although they now, on appeal, pronounce some of them, especially that under No. 4, to have been "merely evidentiary"; wherefore, in so far as material, they must all be accepted here as embodying the established facts.

■ So regarding them, it is further this court's view that neither inquiry No. 4, nor any of the others, may properly be regarded as only evidentiary, but, on the contrary, that they come clearly within the requirements of new rule No. 279, Texas Rules of Civil Procedure, as having submitted "the controlling issues made by the written pleadings and the evidence."

■ Furthermore, being of that character and going as they do progressively, step by step, to the very heart of the controversy, they each and all constituted such specific findings of determinative facts that no general finding like that under previously quoted issue No. 6—to the effect that the property delivered to appellant Western Gulf for the issuance of its 6000 shares of preferred stock to Mrs. Seagraves was community property—could stand up in law against the preceding special one under No. 4—that such stock had been received by her from it "in exchange for stock held by her in the Barnsdall Company." New St. Anthony Hotel Co. v. Pryor, Tex.Civ.App., 132 S.W.2d 620; Peeler v. Smith, Tex.Civ.App., 18 S.W.2d 938; St. Louis S. W. R. Co. v.

Miller & White, Tex.Civ.App., 176 S.W. 830; Greaber v. Coca-Cola Bottling Works, Tex.Civ.App., 98 S.W.2d 1028; Thrush v. Lingo Lumber Co., Tex.Civ.App., 262 S.W. 551; State National Bank v. Woodfin, Tex. Civ.App., 146 S.W.2d 284; Aranda v. Texas & N. O. Ry. Co., Tex.Civ.App., 140 S.W.2d 236.

In other words, it seems quite clear that this procedure, under these first five issues, thus by unchallenged verdict established all the controlling facts, from which the inevitable inference was one of law only, to the effect that both of these blocks of stock were conclusively established to be the separate property of Mrs. Seagraves.

The learned trial court itself apparently recognized that as to No. 6, upon reflection, in so disregarding it, upon the stated ground "that the jury's answer to issue 6 is immaterial, in view of their answer to No. 4"; this quoted ground for the holding, at most, if erroneous at all—in the circumstances otherwise undisputedly appearing—could have amounted to no more than possibly stating a somewhat incomplete reason for an obviously correct action. Texas Digest, Appeal and Error, ☞854(2); Gillette v. Davis, Tex.Civ.App., 15 S.W.2d 1085; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73.

■ At all events, as already indicated, the trial court, in disposing of the eight quoted findings, is held to have erred only in not likewise—along with No. 6—disregarding No. 8, to the effect that the 78 shares of common stock were paid for out of profits from the investment of Mrs. Seagraves' separate property, and discharging the appellant-garnishee upon its answer with reference to them also; this, upon a holding of law that the jury's finding No. 5 that these shares were paid for with the proceeds of the sale of her Barnsdall stock, itself otherwise undisputedly found to have been her separate property, made them, in consequence, her separate property.

To summarize these deductions in another way, these first five findings, none of which have been controverted but all of which were supported by the conclusive if not undisputed evidence, establish these things: (1) That the stock in the Floboots Corporation was a gift to Mrs. Seagraves; (2) her Floboots stock was exchanged for Greta stock; (3) the Greta stock was exchanged for Barnsdall stock; (4) 6000

shares of Barnsdall stock were exchanged— on an equivalent-value basis—for 6000 shares of preferred Western Gulf Petroleum Corporation stock; (5) the 78 shares of common stock in Western Gulf Petroleum Corporation were purchased with the proceeds of the sale of the Barnsdall stock.

Thus, not only was all the evidence to that purport, but further, after an exhaustive search, this court has been unable to find any at all of probative force to the effect that these shares had been paid for out of any profits derived from the investment of any separate property of Mrs. Seagraves. It merely appeared that her stocks, as such, had greatly enhanced in value, due to the discovery of oil by the corporations issuing them.

It follows from the mere recitation of this factual background upon the whole cause, that both the 6000 and the 78 blocks of shares unmistakably were acquired by Mrs. Seagraves as her separate property.

When the law is applied thereto, as this court understands it to be, it further follows that, having been so acquired by her, none of this stock thereafter, up until the service of this writ of garnishment, ever lost that status, but, instead, maintained the same throughout the various mutations into the different organizations shown in the findings. These authorities are thought to fully support the conclusions stated, without extending the citations to any greater length, to-wit: Rawleigh Co. v. McLeod, 151 Wash. 221, 275 P. 700, 64 A.L.R. 246; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799; 23 Tex.Jur., par. 67, p. 90; Fain v. Fain, Tex.Civ.App., 93 S.W.2d 1226; Love v. Robertson, 7 Tex. 6, 56 Am.Dec. 41; Rose v. Houston, 11 Tex. 324, 62 Am.Dec. 478; Speer's 3rd Ed. Marital Rights, Sec. 367, p. 448, Sec. 426, p. 512, Sec. 428, p. 514; Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290; Stringfellow v. Sorrells, 82 Tex. 277, 18 S.W. 689.

■ In rendering its judgment, the trial court further, upon this recitation, denied the appellant-garnishee its claim for attorney's fees, incurred as a consequence of having been haled into the garnishment proceedings, the reasonableness of which had been fixed by the jury under special issue No. 9 at $2,500, to-wit: "* * * since the garnishee is not discharged on its answer as to said 78 shares of common stock, its attorney's fees should not be taxed against the plaintiffs, and garnishee's request that it be allowed its said attorney's fees be and the same is hereby denied and refused."

Under the holding that the appellant should have been discharged upon its answer as to the 78 shares, that refusal of its attorney's fees was likewise error.

In this state of the record, the appellees' earnest reliance upon the general presumption of law, that property acquired by either spouse during the marriage relation is prima facie their community property, being by all the authorities rebuttable by undermining facts, was completely so obliterated in this instance. Daggett v. W. B. Worsham & Co., Tex.Civ.App., 264 S.W. 180; Gillespie v. Gillespie, Tex.Civ.App., 110 S.W.2d 89; Wigmore on Evidence, Vol. 5(2), Sec. 2491; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229.

Neither are the appellees in this court thought to be in the position of having had a jury verdict in their favor upon any of the controlling facts in this controversy, which was supported by the evidence, for the reason, as indicated supra, that all the determinative facts were found quite the other way; for instance, after the jury had found, in so answering the first five inquiries submitted to them, the net effect of which necessarily was that all these corporate shares of both kinds were, at the time of this trial, the separate holdings of Mrs. Seagraves, it was plainly not its province, in response to inquiry No. 8, to express its legal conclusion that—notwithstanding all those foregoing determinations—the 78 shares "were paid for out of profits derived from the investment of her separate property"; there being no evidence whatever of such a development, and, to the direct contrary, it having been otherwise indisputably shown that none of her separate property had been at any time invested so that profits, proceeds, or returns as such could be derived from it, but that there had been in both the original acquirement and the subsequent tenure by her of these two blocks of stock only sales for money and exchanges on an equivalent-value basis of any separate property she owned.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require that the judgment be affirmed as to the 6000 shares of preferred stock, that it be reversed and the cause in that respect rendered for the appellants as to the 78 shares of common stock,

and that appellants recover the $2,500 attorney's fees, as so fixed by the jury, for the benefit of their attorney, Fred R. Switzer.

Affirmed in part, reversed and rendered in part.