## WINDSOR THEATRE CO. v. WALBROOK AMUSEMENT CO. et al.

No. 6244.

United States Court of Appeals
Fourth Circuit.

Argued April 12, 1951.

Decided June 6, 1951.

Paul F. Due, Baltimore, Md., and Harold L. Schilz, Washington, D. C. (Due, Nickerson & Whiteford, Baltimore, Md., Clagett & Schilz and John F. Clagett, all of Washington, D. C., and Bernard L. Rosen, Baltimore, Md., on brief), for appellant.

J. Purdon Wright, Baltimore, Md., and Robert E. Sher, Washington, D. C. (Miller Sher & Oppenheimer, Washington, D. C., and W. Frank Every, Baltimore, Md., on brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the District of Maryland dismissing a complaint asking damages for violation of the Sherman and Clayton Anti-Trust Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq. Appellant, operator of the Windsor Theatre, sued the Walbrook Amusement Company, operator of the Walbrook Theatre, in Baltimore, Maryland, and the Hilton Theatre Company, operator of the Hilton Theatre, also located in Baltimore, together with Thomas B. Goldberg and his wife, who owned both the Walbrook and Hilton Companies, alleging that these parties had combined and conspired among themselves and with seven major motion picture distributors to restrain interstate commerce by refusing to license their copyrighted motion pictures to Windsor on a first-run neighborhood basis.

The Walbrook Theatre has been operated by Goldberg since 1918 and has continuously exhibited Class A feature pictures on a first-run neighborhood basis. The Hilton Theatre was opened by Goldberg early in 1941, across the street from the Walbrook Theatre, and has exhibited westerns, action pictures, reissues and some pictures previously shown at the Walbrook.

In 1940, one Rosen considered opening a theatre across the street from the Walbrook, and investigated the possibility of obtaining pictures for his theatre on a first-run neighborhood basis. R. K. O., United Artists and Columbia were apparently willing to rent Rosen films on this basis but the other major distributors informed Rosen that Walbrook was their regular customer in that area and that they were not interested in making a change.

The evidence indicates that Goldberg was bitterly opposed to the opening of any new theatre in the area. Nevertheless, the new Windsor Theatre opened in the latter part of 1941. Rosen had been able to obtain films from R. K. O., United Artists, Columbia and Republic on a first-run neighborhood basis with clearance over Walbrook and Hilton. The Walbrook continued to exhibit the products of Lowe's, Paramount, Fox, Warner Brothers and Universal, and the Hilton exhibited the Class B pictures of these the same distributors.

These licensing agreements continued substantially until after the now famous three-judge District Court in United States v. Paramount Pictures, Inc., 70 F.Supp. 53, held among other things that the film distributors had to license their pictures on a "competitive bidding" basis. As a result of that decision many of the distributors began to offer their film to both the Walbrook and Windsor Theatres on that basis. When, however, the Supreme Court reversed the Paramount case, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, on the question of "competitive bidding", some of the distributors went back to the old licensing system. Whereupon, Windsor instituted action against the distributors in Washington, D. C. and against Walbrook and Hilton in the District Court of Maryland. The District Court, in an excellent opinion, concluded that there was no evidence to support the conspiracy charge. See 94 F.Supp. 388. We think it necessary to add very little to that opinion.

The only question raised by this appeal is whether the District Court erred in concluding that the evidence failed to show a conspiracy between Walbrook and Hilton, or vertically between either of those companies and the various motion picture distributors, or horizontally among the distributors, to prevent Windsor from obtaining first-run neighborhood pictures.

Whether a conspiracy in restraint of trade exists is a question of fact. As this Court has on numerous occasions said, we are not at liberty to disturb a finding of fact made by the District Court unless it be clearly erroneous. United States v. Appalachian Electric Power Co., 4 Cir., 107 F.2d 769; Guilford Const. Co. v. Biggs, 4 Cir., 102 F.2d 46. We find no such error in this case. A careful examination of the record fails to show any horizontal conspiracy among the distributors in selling to the larger and longer-established Walbrook Theatre in preference to the newly-established Windsor Theatre. It seems to this Court quite natural that the distributors would not be prone to substitute an un-

known customer for a proven one. This Court cannot see how the preference of one exhibitor over another is, *per se,* a combination in restraint of trade. Indeed, every "exclusive" contract has that effect. As the District Court concluded: "There is no evidence tending to show any conspiracy or concerted action by the distributors; that is, there is no 'horizontal' conspiracy in these cases. To some extent it may be said that some of the distributors have much of the time acted similarly with respect to Rosen and Goldberg; but similarity of action under substantially like circumstances affecting each distributor is not proof of conspiracy. This was discussed at some length in the Westway case, supra, [Westway Theatre v. 20th Century Fox Film Corp., D.C. 30 F.Supp. 830] and need not be repeated here."

Further, we conclude that Windsor has failed to show a conspiracy between Walbrook and Hilton or vertically between either of these companies and the various film distributors, however reprehensible may have been Goldberg's conduct in attempting to keep Windsor from undertaking a theatre operation in his neighborhood. Rather the evidence indicates Goldberg was hard pressed to obtain enough pictures for his two houses. As Judge Chesnut said in his findings of fact:

"18. From all the evidence, the Court finds that the defendants have not agreed, contracted, combined or conspired among themselves or with any of the motion picture producing or distributing companies to prevent or restrain the Windsor Theatre from obtaining pictures for exhibition. The Hilton Theatre was opened for the purpose of catering to a different class of patronage from that served by the Walbrook. In so doing the owners of the Hilton were clearly within their rights. The Hilton Theatre was operated throughout in line with that original intention. While the Hilton lost a considerable amount of money in its first year of operation, and a small amount in the second year, on the whole it was profitable. In addition, Mr. and Mrs. Goldberg, who were the sole stockholders, derived a very substantial revenue therefrom in the form of officers' salaries. Goldberg was not a circuit operator. The only theatre in which he had an interest other than the Walbrook and Hilton was the Harford which was a small theatre operated on a very late run and without any substantial buying power. No attempt was made to combine whatever buying power the Harford might have had with that of the Walbrook and Hilton, nor is there any reason to believe that such attempt would have been successful had it been made. Negotiations were conducted on behalf of each of the theatres independently of the others. The Walbrook bought only such pictures as it needed and no more; and the Hilton did the same. In fact, both theatres were constantly short of good pictures throughout the entire period in controversy.

"19. The Windsor succeeded in obtaining a substantial number of pictures on first neighborhood availability in that zone and it could undoubtedly have obtained even more pictures (particularly United Artists) if the attitude of its management had been a little more conciliatory. A compilation introduced in evidence by plaintiff shows that during the period from 1941 through 1948 the Windsor succeeded in obtaining from 20 per cent to 34 per cent of the total number of available pictures of the eight major companies for exhibition on first neighborhood run in that zone. In addition, the Windsor obtained all of the produce of Republic Pictures Corporation. Considering the size of the theatre and the fact that it was built directly across the street from a larger and better established house, these figures indicate that the theatre was treated very well so far as product is concerned. The compilation also demonstrates that the Walbrook was capable of, and actually did, produce very substantially greater revenues for the distributors on first neighborhood run pictures than did the Windsor."

In view of these findings of fact, which find ample support in the evidence, we hold that the decision of the District Court must be affirmed.

Affirmed.