TENNESSEE GAS TRANSMISSION COMPANY, Appellant,

v.

Albert B. MOORHEAD et al., Appellees.

No. 6822.

Court of Civil Appeals of Texas.

Beaumont.

June 2, 1966.

82

J. Robert Liles, Conroe, for appellant.

McClain & Harrell, Conroe, for appellees.

STEPHENSON, Justice.

This is an action for damages to plaintiffs' land because of the diversion of the West San Jacinto River by defendant from plaintiffs' land. Trial was by jury and judgment was rendered for plaintiffs upon such jury issues. The parties will be designated here as they were in the trial court.

Plaintiffs alleged that in 1961 and 1962 defendant permanently diverted the flow of the West San Jacinto River from their 1206.32 acres tract of land by constructing an artificial channel and dam, without consent of the plaintiffs. Plaintiffs alleged this deprived plaintiffs of their riparian rights to such water causing them to lose 2361.54 feet of river frontage leaving them with no land abutting the river. Plaintiffs sought both actual and exemplary damages.

Defendant alleged that the channel was dug and dam constructed with consent from plaintiffs by written instrument dated September 10, 1949 and denied plaintiffs have been damaged.

The jury found that plaintiffs' land had been damaged permanently in the amount of $40,000.00; that defendant did not act in good faith, honestly believing the instrument dated September 10, 1949 granted defendant the right to construct such channel and dam; that defendant acted wilfully and with malice by the construction of the channel and dam; that defendant should pay plaintiffs $30,000.00 exemplary damages.

The pertinent portions of the written agreement dated September 10, 1949, relied upon by defendant, with defendant referred to as "First Party" and plaintiffs as "Second Party" are set out as follows:

"For and in consideration of the sum of One Hundred Twenty-Five Dollars ($125.00) Dollars, paid by First Party to Second Party, the receipt of which is hereby acknowledged, Second Party by these presents grants to First Party the right, privilege and permission to enter upon their interest in the property of Second Party hereinafter described, and at First Party's entire expense, to open the channel of the present High Water Course of the West San Jacinto River, said High Water Course being located near the southerly end of an island made by the present channel and the old channel of said River, said Island being

located North of "First Party's" existing 24-inch pipe line, and to divert the water of said River from its existing most westerly channel to the High Water Course so opened by "First Party" on said property, which proposed channel shall be located at a distance not to exceed one hundred (100' feet east of the low water line of the present channel of the West San Jacinto River, which property is described as follows:

[Description of land omitted]

"For the same consideration Second Party agrees that First Party may, in the opening of said High Water Course, stop the flow of water in said River for such period as is necessary to open the channel of said High Water Course on Second Party's property hereinabove described and referred to. Second Party further agrees that First Party may have the right of ingress to and egress from the land hereinabove described over and across the interest of the undersigned in and to adjoining lands of Second Party and may clear and remove all trees, undergrowths and other obstructions which, in the judgment of First Party, are necessary to be cleared and removed in order to open said High Water Course.

"And for the same consideration First Party agrees further that all dirt removed from channel of High Water Course in the opening thereof will be moved to the old channel which is to be changed and altered under the terms of this Agreement.

"First Party further agrees that same consideration covers all damage to timber cut or destroyed during the construction of the above mentioned channel on the above described property."

■ Defendant urges first that the trial court erred in overruling its motion for instructed verdict because the instrument mentioned gave defendant the right as a matter of law to construct the channel and

dam. From a review of the evidence and a study of such instrument we have concluded the trial court placed the proper construction upon such instrument. This instrument clearly states that the proposed channel to be constructed should be located at a distance not to exceed 100 feet east of the low water line of the present channel. The evidence locates the present channel and also shows that after such instrument was executed in 1949 defendant performed the work provided for by cutting or widening the channel as it, existed a distance of 200 feet in an easterly direction and paid plaintiffs an additional $200.00 for moving 200 feet instead of 100 feet as provided in the instrument. The evidence also shows it was 12 years later and after a new study had been made, that defendant dug the new channel 650 feet west of the channel as it existed in 1949. From a study of the instrument in question as a whole, we have concluded it was not the intention of the parties that the river be diverted so that it would no longer abut the plaintiffs' land. Defendant was not given written permission to cut the channel and construct the dam as the work was performed in 1961–1962. The point is overruled.

■ Defendant contends the trial court erred in its ruling in reference to the admissibility as evidence of the agreement dated September 10, 1949. The record shows such agreement was admitted in evidence when first offered, for the limited purpose of showing good faith on defendant's part. Later the agreement was admitted in evidence for all purposes. At the close of all the evidence the trial court instructed the jury that such agreement could be considered only for the limited purpose of showing defendant acted in good faith. Such agreement having been plead as a defense and having been properly identified was admissible as evidence. Whether such agreement constituted a defense to plaintiffs' cause of action was a question of law for the court to determine. The only issues submitted to the jury upon which this evidence could have any bearing were those concerning exemplary damages. The jury was permitted to consider such agreement in connection with the exemplary damages issues. We find that no harm could have been done defendant because of the court's action in limiting the evidence. Rule 434, Texas Rules of Civil Procedure.

■ The trial court admitted in evidence a large rough map prepared by one of the plaintiffs showing the area generally including Conroe, Humble, Interstate 45, Highway 59, the International Airport and some subdivision along the San Jacinto River and elsewhere in the area. Defendant objected on the ground that it was hearsay inasmuch as the testimony showed the witness used some maps of the area not prepared by him. However, the witness testified that he was familiar with the information shown on the map and the size and location of the objects shown were correct and further that he had verified the distances on the ground with the speedometer on his car. This is not a boundary suit and the map in question was not used to locate specific corners of the plaintiffs' land. No material discrepancies have been pointed out to this court which could have influenced the jury in the answers made to the special issues submitted to them. The point is overruled.

■ Defendant next complains of the action of the trial court in permitting a witness to testify as to comparable sales and as to the market value of plaintiffs' land. Defendant quotes this testimony given by such witness:

"I have found many sales in the area. I have had them in my files but I have two sales that I think are good tools in arriving at a value estimate and that do have a degree of comparability, a big degree of comparability."

There was no error on the part of the trial court to permit the witness to testify as to comparable sales even though such evidence might be hearsay, as long as the testimony of the witness shows the com-

parable sales are shown not for the purpose of showing the value of such other land nor the facts of such other sales, but as showing the witness used such information in arriving at the value of the plaintiffs' land. The qualifications of the witness as an expert are not challenged and the comparability of the sales to which he testified are not challenged. The testimony was admissible to show the basis of the opinion value stated by this witness. State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207. The testimony being admissible for a specific purpose, defendant cannot complain of the failure of the trial court to limit the testimony to such specific purpose in the absence of a request by defendant for such instruction to the jury. Massie v. Hutchison, 110 Tex. 558, 222 S.W. 962. The points are overruled.

█ Defendant contends it was error for the trial court to refuse to submit requested special issues inquiring whether or not only a portion of plaintiffs' land was damaged. Defendant alleged that if plaintiffs' land had been damaged, only a small portion had been damaged, and urged that it was entitled to have its affirmative defense submitted to the jury. The plaintiffs' pleadings treat the property involved as one tract of land and damages are alleged and sought on the entire tract of land. The evidence shows the land in question was acquired as a single tract, under one enclosure, and used by plaintiffs for grazing and growing timber as a single unit. The measure of damages in this case was properly submitted to the jury by the issues inquiring as to the difference between the market value of the entire tract of land immediately before and immediately after the construction of the channel and dam. This method of submission permitted the jury to determine whether or not only a part of plaintiffs' land had been damaged.

█ Defendant's last four points of error concern exemplary damages. It is first urged that plaintiffs' pleadings are not sufficient. Plaintiffs alleged:

"On or about December 1961 and in to January and February, 1962, the Defendant, through its officers, employees, servants, agents and representatives, unlawfully and wrongfully, and without the consent of Plaintiffs and in violation of Plaintiffs' rights to the use of the waters of the San Jacinto River, did change the natural and accustomed course, channel and bed of the San Jacinto River, and diverted and turned away the natural and ordinary flow of said river from the aforesaid lands owned by Plaintiffs, by construction of an artificial channel and dam. * * *

"Defendant, by its wilful and deliberate acts of creating such artificial channel and dam has diverted the entire natural flow of the San Jacinto River through the artificial channel and said waters are now flowing through the artificial channel leaving the natural watercourse and channel that abuts the above described land of Plaintiffs without a flow of surface water.

"Plaintiffs further represent to the Court and Jury that while in the process of diverting the course and flow of said river, Plaintiffs requested the Defendant to desist therefrom. Notwithstanding such request, Defendant by and through its agents, servants and employees, continued to pursue its wrongful, wanton and wilful acts * * * and by reason thereof Defendant is additionally liable to Plaintiffs in the sum of $100,000.00 for exemplary damages. * * *"

There was no exception filed by defendant to plaintiffs' pleading as to exemplary damages. The pleadings show defendant did the acts complained of "unlawfully and wrongfully", also "by its wilful and deliberate acts" and "continued to pursue its wrongful, wanton and wilful acts". Such pleadings were sufficient to raise an issue for the jury.

Special Issue No. 6–A submitted to the jury read as follows:

"Do you find from a preponderance of the evidence that the Defendant through its agents, servants, and employees acted willfully and with malice towards Plaintiffs by the construction of the dam and channel?"

The pleadings set forth above justified the trial court in the submission of this special issue.

It is also contended that there is no evidence and insufficient evidence to support the findings of the jury as to exemplary damages and that such findings are against the great weight and preponderance of the evidence. Defendant points out that this is not a gross negligence case, and argues that there must be evidence of evil intent in a case involving an intentional doing of an act complained of, to support findings of exemplary damages. Defendant further argues that in actions involving trespass to land, that there must be both malice and evil intent to warrant the imposition of exemplary damages.

We hold the law in this state to be to the contrary, and that it is not necessary to prove an evil intent in order to recover exemplary damages. A defendant may be compelled to respond in exemplary damages if the act causing actual damages is a wrongful act done intentionally in violation of the rights of the plaintiff. Aetna Life Ins. Co. v. Love, Tex.Civ.App., 149 S.W.2d 1071. It has been said recently that exemplary damages may be awarded in addition to compensatory damages where a defendant is shown to have acted wilfully or fraudulently. Punitive damages are allowed by law by way of punishment and as an example for the good of the public. Pan American Petroleum Corp. v. Hardy, Tex.Civ.App., 370 S.W.2d 904. The jury found in this case that defendant acted wilfully and with malice towards plaintiff. Assuming that a plaintiff must show malice to recover exemplary damages, the cases hold that it is not necessary to prove affirmative malice or ill will, as malice can be inferred from the acts and conduct of the wrongdoer. Schutz v. Morris, Tex. Civ.App., 201 S.W.2d 144.

Applying this law to the facts of this case, and in passing upon the "no evidence" points, we consider only the evidence favorable to the findings of the jury. The evidence shows that even though defendant entered into an agreement with plaintiffs in 1949 to alter the course of the West San Jacinto River, that the alteration was intended to move the channel East and that the river would still abut plaintiffs' land. This work was actually performed following the execution of such 1949 agreement. In 1961 and 1962 with no further agreements with plaintiffs and without consent of plaintiffs, defendant determined that it was to its best interest to once again alter the course of the river. However, this time the new channel moved the course of the river away from plaintiffs' land completely and a dam was constructed so that the river no longer could flow by plaintiffs' land. Even though defendant contended throughout the trial that such move was made in good faith under an honest belief the instrument of 1949 gave defendant such right, the jury found to the contrary. This finding of the jury is not complained of in this court. The evidence supports the findings of the jury. Passing upon the insufficiency of the evidence points and the points contending the findings of the jury were contrary to the weight and preponderance of the evidence, we consider the entire record. We do not conclude that such findings were manifestly wrong or unjust. All of such points are overruled.

Affirmed.