Charles S. CHRISTOPHER, Appellant,

v.

GENERAL COMPUTER SYSTEMS, INC., Appellee.

No. 19238.

Court of Civil Appeals of Texas, Dallas.

Aug. 31, 1977.

Rehearing Denied Nov. 15, 1977.

R. L. McSpedden, Collie, McSpedden & Roberts, Dallas, for appellant.

Dean Carlton, Dallas, for appellee.

GUITTARD, Chief Justice.

This suit was brought by General Computer Systems, Inc., a supplier of computer equipment, against Surety Industries, Inc. and Charles Christopher, Surety's president and sole stockholder, for misappropriation of funds alleged to have been collected by Surety as agent for General and diverted by Christopher for his personal use. After a verdict favorable to General, the claim against Surety was severed, and judgment was rendered against Christopher on the verdict for $117,190.97 actual damages and $150,000 exemplary damages. On this appeal Christopher's principal contentions are that the pleadings and evidence are insufficient to support the findings of damages, that the exemplary-damage issue was improper, and that the court erred in admitting evidence of appellant's conviction of a crime which, he asserts, did not involve moral turpitude. We affirm.

The evidence shows that General from time to time sold equipment to Surety, which leased it to various customers, and that General provided maintenance service for the lessees. The parties did business under a "Master Sales Agreement," which provided as follows:

> SURETY agrees that it will collect, as agent for GENERAL monthly maintenance payments, without fee whatsoever to SURETY. SURETY will pay such maintenance payments to GENERAL within five (5) days after receipt, without any deduction whatsoever.

General alleged that under the above provision of the contract, Surety had collected maintenance payments from lessees which it had failed to pay over to General, that these funds were trust funds which Surety had commingled with its own funds, that Christopher and the other officers of Surety had caused the funds to be dissipated and had appropriated them to their own personal and business purposes, and that more than $500,000 of such funds had been lent or given to defendant Christopher.

In response to special issues, the jury found (1) that the amount of maintenance funds collected by Surety and not paid to General was $117,190.97, (2) that such collections were made by Surety as agent for General, (3) (not pertinent), (4) that maintenance funds so collected were commingled with Surety's general funds, (5) that such commingled funds or a part thereof were diverted by Christopher, and (6) that Christopher diverted more than $125,000 of such commingled funds. Other findings, including those concerning exemplary damages, will be noticed later in this opinion.

### 1. *Funds Collected as Agent*

We consider first appellant Christopher's attack on the answer to special issue number one as without sufficient support in the evidence. By this answer the jury found that Surety collected $117,190.97 of maintenance funds which it failed to pay over to General. After review of the evidence, we conclude that there is sufficient evidence to support this finding.

The basic problem of proof was that neither General nor Surety had adequate records of the maintenance fees collected by Surety. The evidence shows that lessees of the equipment made monthly payments to Surety covering both the rentals owing to Surety and the maintenance fees collected by Surety for General. When Surety received these payments, it deposited them with its general operating funds and failed to keep a careful record of how much of each of such payments was from maintenance as distinguished from rental. Christopher testified that the maintenance fees went into several accounts and that Surety had no policy or established method of accounting for them. He admitted that it was difficult to allocate these collections between funds owed to Surety and funds owed to General. Surety's accountant Willke testified concerning a summary he had made from Surety's records of maintenance fees collected, but his testimony based on these summaries cannot be taken as conclusive in view of other testimony concerning the inadequacy of Surety's records. Christopher testified that Surety sometimes had difficulty determining which funds belonged to it and which to General. General's accountant, Harry Greenberger, had been permitted to make an extensive investigation of Surety's books, and he testified concerning the summaries he had made, which did not agree with Willke's summaries. Greenberger also testified that he was unable to verify all the book entries from original documents or entries made at the time of the transactions and that in some respects the records he examined were inconsistent. He also testified that Surety's records, particularly its general ledger for 1974, were not kept in accordance with normal bookkeeping practices.

In this situation, General's principal reliance is on circumstantial proof. Greenberger testified concerning the amount of maintenance fees billed by General to Surety, representing amounts payable by lessees to Surety as General's agent. In order to establish what part of these billings had been collected, he undertook to determine from Surety's records which of the monthly rentals had not been received. Apparently, Surety did keep a record of rentals past due. Greenberger then inferred that if the rental was not collected in a particular case, the corresponding maintenance fee for that month was not collected, and that if the rental was collected, the maintenance fee was collected. He then totaled the uncollected maintenance fees so determined and subtracted that amount from the total billings for maintenance fees to obtain a figure for the maintenance fees actually collected. On that basis, after taking into account certain credits to which Surety was entitled according to a stipulation of the parties, and, allowing for other adjustments not in controversy, Greenberger arrived at a net amount owing to General of $117,190.97, the amount found by the jury in answer to issue number one. This figure is less than the amount owed to General as evidenced by Greenberger's summaries of Surety's records.

■ Appellant attacks this computation by challenging Greenberger's inference that Surety's record of the rentals not collected was proof of the maintenance fees collected. By itself, of course, it did not constitute such proof. There was other proof, however, which we find circumstantially sufficient to support Greenberger's inference. The maintenance fees, like the rentals, were paid monthly by the lessees to Surety. Christopher admitted that the maintenance fees and rentals were billed to the lessees on the same invoices and were collected together. There is no evidence of an instance when one was received without the other. Since Surety had the duty as General's agent to collect and pay over the maintenance fees, it is in no position to assert that when a payment was insufficient to cover both, that payment should be credited to the rental rather than to the maintenance fee. Christopher, as Surety's chief executive officer, is in no better position.

■ Moreover, Surety, as General's agent, had a duty to keep and maintain the maintenance funds as a separate and identi-

fiable account for the benefit of General. *Searle-Taylor Machinery Co. v. Brown Oil Tools, Inc.,* 512 S.W.2d 335, 338 (Tex.Civ. App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.). According to Christopher's own testimony, Surety did not comply with that duty. Neither Surety nor Christopher offered any evidence tending to show that rentals were received from lessees who did not at the same time pay also the corresponding maintenance fee. Under these circumstances we conclude that the evidence provides a rational basis for accepting Greenberger's computation, at least as prima facie proof of the amount of maintenance funds collected by Surety and not paid over to General. A contrary holding would permit Surety and Christopher to take advantage of the inadequacy of Surety's own records to avoid accountability for funds collected and held as General's agent and diverted by Christopher to his own personal use.

Appellant attacks Greenberger's figures on the additional ground that they include amounts collected before March 1975 when, according to a letter from General's lawyer, all accounts were settled and Surety gave a note for the agreed amount due, which was subsequently paid. We are unable to determine from this letter and the testimony relating to it whether it had anything to do with maintenance funds collected by Surety. The amount of $383,473.03 stated as the "outstanding balance" is apparently based on other transactions between General and Surety. At least, Greenberger and the jury might properly have so regarded it, so far as the present record shows. Consequently, we cannot say that this letter established conclusively the inaccuracy of Greenberger's figure of $117,190.97.

### 2. *Diversion of Commingled Funds*

We next consider appellant's attack on the jury's finding in answer to issue number five that appellant diverted the commingled funds or a part thereof. In support of this attack, appellant argues that the effect of the suit is to hold him as a shareholder liable for the corporate debts because he received money from the corporation. He insists that this cannot be done unless the corporation has become insolvent and has ceased doing business, or unless the stockholders have "denuded" the corporation of its assets, and that these facts are neither alleged nor proved.

We cannot accept this analysis because the maintenance funds were not simply a debt that Surety owed to General. Under the express provision of the "Master Sales Agreement" above quoted and also under the jury's finding in answer to issue number two that the maintenance funds were collected by Surety as agent for General, these funds belonged to General, not to Surety. The evidence shows that Surety commingled General's funds with its own and that appellant Christopher knew he was withdrawing funds from the commingled account. To the extent that Christopher diverted such funds to his own use, he was diverting General's funds as well as Surety's funds, and he is liable directly to General for his own acts rather than for the acts of Surety. *Searle-Taylor Mach. Co. v. Brown Oil Tools, Inc.,* 512 S.W.2d 335, 338–39 (Tex. Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.). By withdrawing for his personal use funds that he knew to be commingled, he became personally responsible for the commingling to the extent of the funds withdrawn. As sole stockholder and chief executive officer, Christopher had control of the evidence concerning disposition of the funds. He admitted that he had complete knowledge and control of Surety's affairs. Thus he was responsible for the commingling, and, consequently, we hold that he had the burden of proving how much of the funds he received belonged to Surety rather than to General. *See Dessommes v. Dessommes,* 505 S.W.2d 673, 680 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.), and *cf. Logan v. Logan,* 138 Tex. 40, 156 S.W.2d 507, 510–11 (1941) (dictum). Since he made no such proof, he is liable to General for the full amount of General's funds so commingled up to the amount of the commingled funds diverted by him, which, as the jury found, exceeded the amount of General's funds commingled. Under the

circumstances, his liability need not be predicated on proof that Surety was insolvent and ceased to do business or that its assets had been "denuded."

◼ Accordingly, we have examined the record to determine whether there is evidence that Christopher did, in fact, divert to his own use more than $125,000 of commingled funds, as the jury found in answer to issue number five. We find the evidence sufficient to support the jury's answer to this issue. Christopher himself testified that the maintenance funds collected were deposited with Surety's general operating funds and that either he or other enterprises controlled by him benefited from more than $500,000 withdrawn from such funds. Moreover, the evidence shows that an account was maintained on Surety's books showing more than $540,000 of withdrawals by its officers and employees from its general funds. Of these withdrawals, Christopher admitted that more than ninety percent were attributable to him. He also admitted that he had reported $50,000 of these withdrawals on his personal income tax return for 1973 and $120,000 on his return for 1974. This testimony is ample to support the jury's finding that Christopher diverted to his own use more than $125,000 of the commingled funds.

◼ Appellant also contends that General did not plead any basis for his personal liability for the debts of Surety. The petition alleged that Surety received the maintenance funds as General's agent, that Christopher and other officers of Surety caused the funds to be commingled with other funds of Surety, and that Christopher and the others "had appropriated said funds to their own personal and business uses, to-wit: in excess of $500,000 has been lent or given to Christopher or to activities charged to him." We hold that this pleading supports submission of issue number five and recovery of the amount found by the jury, since its does allege a wrongful diversion by Christopher of funds belonging to General.

◼ Appellant's assertion of a conflict in the jury's findings is likewise without foundation. He argues that since the jury found in answer to issue number one that the maintenance funds collected and not paid over to General amounted to $117,-190.97 and also found in answer to issue number five that the amount of the commingled funds diverted by Christopher was more than $125,000, there is a conflict in these findings because the commingled funds are the same as maintenance funds. The obvious answer to this contention is that after the maintenance funds were commingled with Surety's other funds, the commingled funds amounted to more than the maintenance funds alone. Consequently, there is no conflict between these findings. The judgment rendered against Christopher for actual damages in the amount of $117,190.97 is consistent with both of these findings.

### 3. *Conspiracy*

Appellant's next attack on the verdict is upon the answer to issue number seven in which the jury found "that Charles S. Christopher and Surety Industries, Inc., conspired to withhold maintenance funds from General Computer Systems, Inc." This issue was apparently submitted in connection with General's claim for exemplary damages, since it is followed by an issue inquiring whether such conspiracy was "willful and deliberate," and another inquiring whether exemplary damages should be awarded. Appellant's objection to the issue is that there are no pleadings to support it, that there is no evidence to support the jury's finding, and that the evidence is insufficient to support the finding.

◼ Appellant's contention concerning lack of pleading is that General did not plead that Christopher conspired with the corporate defendant, Surety Industries, Inc., but only that he conspired with its officers, George Dillman and Dan Gordon, to dissipate and misappropriate the maintenance funds collected for General. We cannot consider this argument because it was not preserved by a proper objection in the

trial court. The objections to the charge are shown in the statement of facts, as rule 272 of the Texas Rules of Civil Procedure now permits. These objections are contrary to the following prohibitions in rule 274 of the Texas Rules of Civil Procedure:

> Where the objection made by the complaining party, . . . is in the opinion of the appellate court obscured or concealed by voluminous unfounded objections, . . . such objection . . shall be untenable. No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only.

The objection to issue number seven violates this rule in two respects. In the first place, defendant's only objection to this issue is nothing more than a reference to other objections. The entire objection is as follows: "The same three, the first three objections to Special Issue No. 7." The three objections referred to are apparently those made with respect to the first special issue, including the objection that that issue is not supported by the pleadings. In the second place, the objection is obscured by voluminous unfounded objections. The same three objections are repeated by reference with respect to the first twelve special issues—all issues, apparently, except those submitted at defendant's request. Consequently, we hold that this objection is not preserved for review. *Monsanto Co. v. Milam*, 494 S.W.2d 534, 537 (Tex.1973).

We must consider, however, appellant's contentions that the answer to issue number seven is without support in the evidence and that the evidence is insufficient to support this finding, since these objections may properly be made after verdict. Tex.R. Civ.P. 279; *Strauss v. LaMark*, 366 S.W.2d 555, 558 (Tex.1963). Appellant argues that there is no mention of a "conspiracy" in the statement of facts other than the testimony of appellee's witness Greenberger, who admitted that he did not of his own knowledge know that Christopher had "conspired" with Dillman or Gordon to do anything. Appellant seems to take the view that in the absence of evidence that Christopher made an express agreement with Dillman or Gordon, or some other identifiable individual, to divert the maintenance funds collected for General, there is no evidence of a conspiracy.

We do not accept this view. The charge defines "conspiracy" as "a combination of two or more persons by concerted action to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means." It defines "person" as including a corporation as well as a natural person. No objection was made to either of these definitions. Issue number seven does not inquire whether appellant conspired with Dillman or with Gordon, but rather inquires whether he conspired with Surety Industries, Inc. Since the jury was instructed that the term "person" as used in the definition of conspiracy included a corporation, and since appellant was the president and chief executive officer of Surety, as well as its sole stockholder, the question is whether there is evidence to show that the acts of the appellant in his individual capacity "combined" with the acts of the corporation, acting through appellant as its chief officer, to withhold the maintenance funds from General. After reviewing the record, we conclude that there is ample evidence to support this finding. Christopher admitted that he had complete knowledge and control of Surety's affairs. As an officer of Surety he was responsible for Surety's commingling of General's funds with its own, and he was also responsible for the diversion of these funds to his own use as an individual. In his individual capacity he accepted the commingled funds, knowing their source, and used them for his own purposes. We hold that this evidence is sufficient to show that there was a combination between him as an individual and the corporation for which he acted, to withhold the maintenance funds from General. It follows that the evidence is sufficient to support the answer to issue number seven under the definition of "conspiracy" and "person" in the court's charge.

On the present record, a predicate for exemplary damages might have been

established on the theory of willful conversion, without any finding of conspiracy, but the issues as submitted impose on General a greater burden. The issues as submitted and answered by the jury establish that Christopher diverted General's funds to his own use, that this diversion was the result of a combination between his acts as an individual and his acts on behalf of Surety, and that these acts were willful and deliberate. Thus the jury has found actual damages as a result of a willful and deliberate wrong on the part of Christopher and has assessed his punishment for that wrong at $150,000. We find ample evidence to support these findings. Conceivably, in some other type of case, error might be committed in defining "conspiracy" so as to permit a jury to consider the acts of an individual on his own behalf in combination with his acts as an officer of a corporation, and in some other case, a "meeting of the minds" between two natural persons might be required. But since the definition was submitted here without objection on that ground, and since the jury has found, in effect, that Christopher's actions on his own behalf in combination with his acts as an officer of Surety, were willful and deliberate and resulted in damage to General, we hold that all elements of an award for exemplary damages have been established.

Appellant complains also that no judgment could be based on the finding of conspiracy in answer to issue number seven because "there can be no actionable conspiracy in resisting the payment of a lawful obligation." In support of this contention, he cites *Bartelt v. Lehmann*, 207 S.W.2d 131, 133 (Tex.Civ.App.—Austin 1947, writ ref'd), which was a suit on a note against a business trust, in which individual liability of the trustees was asserted on the ground that they had conspired to prevent payment of their own unpaid subscriptions for shares of the trust. The court held that the allegation of conspiracy was insufficient to assert individual liability because it was "not an unlawful purpose to resist the payment of an obligation, regardless of its legality." This case is inapposite because here the conspiracy alleged is not simply to resist

payment of a debt by Surety to General, but rather to divert to Christopher's personal use funds belonging to General and held by Surety as agent. Such a wrongful diversion of General's funds was clearly unlawful, and thus the pleading and the evidence above detailed are sufficient to establish Christopher's personal liability.

### 4. *Exemplary Damages*

■ The next group of points advanced by appellant concerns the jury's finding in answer to issue number ten that exemplary damages should be awarded against him. We cannot consider his complaints that this issue is a general charge and a comment on the weight of the evidence because no objection on these grounds was made before the charge was submitted to the jury. His principal argument is that there was neither pleading nor proof of fraud, malice, or oppression which, he says, is essential to recovery of exemplary damages, citing *Ogle v. Craig*, 464 S.W.2d 95 (Tex.1971).

Although the petition does not use the term "malice," it does allege that defendants "by their willful, capricious, and torturous [sic] conduct, specifically the willful misappropriation of trust funds and the conspiracy to damage GCS, as aforesaid, are liable to plaintiff for punitive damages." The record discloses no special exception to this allegation. In the absence of such an exception we hold that the allegation of "willful misappropriation . . . and the conspiracy to damage GCS" was sufficient to support submission of the issue of exemplary damages. *Tennessee Gas Transmission Co. v. Moorhead*, 405 S.W.2d 81, 85 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.).

■ We conclude also that the evidence supported the finding of exemplary damages, although none of the witnesses used the word "malice," and none testified to any expressions of ill will against General on the part of Christopher or any specific intent to cause injury to General other than to take money which, at least in part, be-

longed to General. Willful misappropriation of property without justification is a recognized ground of exemplary damages, even in the absence of an express finding of malice. *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.). The finding of exemplary damages in answer to issue number ten must be taken together with the finding in answer to issue number eight that the conspiracy between Christopher and Surety to withhold the maintenance funds from General was "willful and deliberate." Since appellant makes no attack on this finding, it must be taken as established. *D. T. Carroll Corp. v. Carroll*, 256 S.W.2d 429, 432 (Tex.Civ.App.—San Antonio 1953, writ ref'd n. r. e.); *Western Gulf Pet. Corp. v. Frazier Jelke & Co.*, 163 S.W.2d 860 (Tex. Civ.App.—Galveston 1942, writ ref'd w. o. m.). This finding is not merely that Christopher's action was "wrongful," such as the finding regarded in *Ogle* as insufficient to support exemplary damages. It is rather a finding of a willful tort of the type generally held sufficient to support an award of exemplary damages. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 583 (Tex.1963) (conspiracy by corporate officers to obtain profits from dealings in corporation's stock to damage of other stockholders); *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 208 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ) (conversion of corporate stock).

If we should construe appellant's attack on issue number ten as raising the question of sufficiency of the evidence to support the answer to issue number eight, we still could not sustain appellant's contention because our review of the record convinces us that there is ample evidence to support the finding that the action of Surety and of Christopher in withholding maintenance funds and diverting such funds to Christopher's own use was, indeed, "willful and deliberate."

Appellant complains also that the award of $150,000 as exemplary damages was excessive. We cannot agree. Several factors supporting this award are shown in this record. Besides expenses of litigation, the deliberate withholding of this sum of money is shown by the record to have caused General' severe financial distress. The consequent damage, though perhaps too remote to be considered as actual damages, could properly be considered by the jury on the issue of exemplary damages. *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 208 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); *Pan American Pet. Corp. v. Hardy*, 370 S.W.2d 904, 908 (Tex.Civ.App.— Waco 1963, writ ref'd n. r. e.). Moreover, the amount of $150,000, as found, is not disproportionate to the finding of actual damages in the amount of $117,190.97. This ratio between actual and exemplary damages is an important factor in determining whether an award of exemplary damages is excessive. *Southwestern Inv. Co. v. Neeley*, 452 S.W.2d 705, 707–08 (Tex. 1970). Consequently, we cannot hold the finding of exemplary damages to be excessive.

## 5. *Evidence of Conviction*

Appellant also complains of the admission of his conviction for violation of the federal eavesdropping statute on the ground that such conviction was not final and did not involve moral turpitude. Appellant insists that the prejudicial effect of this evidence is established by the substantial adverse verdict. We conclude that appellant has no standing to complain of this evidence, since he did not make a timely objection in the trial court. He did raise the matter before trial by a motion in limine, which the court overruled, but such a motion and ruling is not sufficient to preserve the error for appeal. *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963). When that ruling was made, counsel was faced with a tactical dilemma. He could either raise his objection again when the evidence was offered before the jury, knowing that the judge had already decided to overrule it, or he could attempt to soften the effect of the evidence by placing the matter before the jury himself on *voir dire* of the jury panel. He

chose the latter course, and only after evidence of the conviction had been admitted before the jury did he make a formal objection on the grounds now urged. Although we sympathize with counsel's problem, we must hold that under *McCardell* he has no standing to ask for a reversal on this ground.

### 6. Denial of Continuance

Finally, we note appellant's complaint that the court abused its discretion in overruling his motion for continuance on the ground that trial was set only two months after the case was filed, preparations for trial were not complete, and counsel for one of the defendants was unable to participate in selection of the jury because his wife had recently given birth. Appellant has shown no harm from the court's action in proceeding with the trial, and the motion does not show that the attorney temporarily absent from the trial was counsel for the present appellant rather than the other defendant. Consequently, we hold that postponement of the trial was a matter within the discretion of the trial judge.

In oral argument counsel disclosed that the early trial setting was made by the court and agreed to by the parties in an effort to avoid a hearing on an application for temporary injunction, which probably would have been necessary if trial on the merits had been set in normal course. We commend the court and counsel for this procedure, since it did apparently avoid such a hearing and since it resulted in a final judgment in less time than would have been required by a hearing on the application for temporary injunction and disposition of an appeal from the interlocutory order granting or denying injunctive relief.

Affirmed.

AKIN, Justice, dissenting.

I cannot agree with the majority's holding that the jury's answer to special issue number seven, the conspiracy issue, is supported by the evidence. One of the requirements of a civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968). As the majority concedes, the finding that two persons participated in the conspiracy can only be supported if we treat Christopher in his individual capacity as one person and Surety acting solely through its officer Christopher as the second person. There is no evidence that any other officer or agent of Surety participated in or had knowledge of the alleged conspiracy. "[O]ne of the essential elements required to establish a civil conspiracy is a 'meeting of the minds on the object or course of action.'" *Id.* at 857. Although a corporation may be a "person" for the purpose of conspiracy law, it does not have a "mind" separate and distinct from the minds of its officers and agents. Clearly, there cannot be a meeting of the minds where there be but one mind. Thus, the courts have refused to find a conspiracy where only one natural person was acting in the scheme or plan which was the basis of the alleged conspiracy, even though he was an officer or agent of two corporations and both corporations were utilized in the scheme or plan. *Lockwood Grader Corp. v. Bockhaus*, 129 Colo. 339, 270 P.2d 193, 196–97 (1954); *Windsor Theatre Co. v. Walbrook Amusement Co.*, 94 F.Supp. 388, 396 (D.Md. 1950), *aff'd* 189 F.2d 797 (4th Cir. 1951); *Knutson v. Daily Review, Inc.*, 383 F.Supp. 1346, 1359 (N.D.Cal.1974), *modified*, 548 F.2d 795 (9th Cir. 1976) (the Ninth Circuit did not pass on this question, but did note the stated rule in footnote 4 at 802). This does not mean that a natural person cannot enter a conspiracy in multiple capacities; it merely means that two natural persons are required to constitute a conspiracy.

Since the exemplary damages can be predicated only on the jury's finding of a conspiracy and since there is no evidence of a conspiracy here as a matter of law, I would reverse and render the judgment of the trial court with respect to exemplary damages.

## ON MOTION FOR REHEARING

Appellant attacks our holding that the evidence supports the jury's findings of a conspiracy between him and Surety Industries, Inc., on the ground that we have "undertaken to establish the rule in Texas that a corporation can conspire with its chief executive officer when the one and only actor in the whole transaction was the chief executive officer himself."

■ This argument indicates a misunderstanding of our ruling. We have not undertaken to establish any such rule. Our decision is limited to the peculiar circumstances of this case and the language of the issues and accompanying definitions, as submitted to the jury without objection. We agree with the decisions cited by appellant to the effect that a corporation cannot conspire with itself, no matter how many of its agents may participate in the corporate action. *Worley v. Columbia Gas of Kentucky*, 491 F.2d 256, 261 (6th Cir. 1974); *Dorsey v. Chesapeake & Ohio Ry.*, 476 F.2d 243, 245 (4th Cir. 1973); *Pearson v. Youngstown Sheet and Tube Co.*, 332 F.2d 439, 442 (7th Cir. 1964); *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); *Webb v. Culberson, Heller & Norton, Inc.*, 357 F.Supp. 923, 924 (N.D.Miss.1973); *Johnny Maddox Motor Co. v. Ford Motor Co.*, 202 F.2d 103, 105 (W.D. Tex.1960). We accept also the rulings of certain federal trial courts construing the Sherman Anti-Trust Act as requiring that a conspiracy in restraint of trade be shown by a concert of action between more than one individual person. *Knutson v. Daily Review, Inc.*, 383 F.Supp. 1346, 1359 (N.D.Cal. 1974), *modified*, 548 F.2d 795 (9th Cir. 1977); *Windsor Theatre Co. v. Walbrook Amusement Co.*, 94 F.Supp. 388, 396 (D.Md.1950), *affm'd*, 189 F.2d 797 (4th Cir. 1951).

Likewise, he have no quarrel with those decisions holding on their particular facts that the claim of common-law conspiracy did not provide an independent ground of primary liability against a corporation and its chief officer in the absence of any participation in the wrongdoing by another corporate agent. *Ariate Compania Naviera v. Commonwealth Tankship Owners, Ltd.*, 310 F.Supp. 416, 421 (S.D.N.Y.1970); *Bereswill v. Yablon*, 6 N.Y.2d 301, 305, 189 N.Y. S.2d 661, 664, 160 N.E.2d 531, 533 (1959); *Lockwood Grader Corp. v. Bockhaus*, 129 Colo. 339, 270 P.2d 193, 196–97 (1954). Even if these cases are taken to stand for the rule that conspiracy is not a ground of recovery against an individual acting in more than one capacity, that rule, as applied here, would mean only that the definition of conspiracy in the charge was too broad in that it permitted the jury to consider Christopher's acts as an individual in combination with his acts as a corporate officer in determining the existence of a conspiracy. If such an objection had been made, the court might have given an appropriate limiting instruction or it might have submitted the exemplary damages issues on some other theory raised by the evidence. Since no such objection was made, our question is whether the evidence supports the findings on the seventh issue under the broad definitions as submitted. For the reasons given, we hold that it does.

Moreover, since Christopher's wrongful conduct and his liability for actual damages were established by other findings, and since the only significance of the conspiracy findings in the context of this appeal is to characterize his wrongful conduct as "willful and deliberate" for the purpose of recovering exemplary damages, we hold that the jury's findings, based on the evidence of such a combination, supports the recovery of exemplary damages, however inadequate the evidence may have been to establish a common-law conspiracy for any other purpose.

Motion for rehearing overruled.

AKIN, J., dissents.