**Glen E. CLARK, Appellant,**

v.

**Ardalia VAUGHN et al., Appellees.**

**No. 18238.**

Court of Civil Appeals of Texas, Dallas.

Dec. 6, 1973.

Rehearing Denied Jan. 3, 1974.

John R. Bryant, Dallas, for appellant.

Edward J. Drake, Brady, Drake & Wilson, Roger Turner, Mark C. Bomba, Dallas, for appellees.

BATEMAN, Justice.

The appellant Glen E. Clark sued the appellees Ardalia Vaughn and Daniel Davis for damages for conversion of his automobile. He also sued Vernell Richardson, a notary public, and Western Surety Company, surety on her bond. He appeals from a take nothing judgment.

In his original petition filed February 10, 1971, against Vaughn alone, Clark alleged that she wrongfully took possession of his automobile on or about January 15, 1971. He sued for title and possession of the car, as well as for actual and exemplary damages. Vaughn filed her answer and counterclaim for $587.60 which she advanced on behalf of Clark and for title and possession of the automobile in question. She alleged that at the time of her advance Clark executed a Texas Certificate of Title transferring the record title of the automobile to her under an agreement that when he paid $587.60 to her she would transfer legal title to the car back to him, but that if he did not reimburse her ownership of the car "would inure to her benefit." Clark answered this counterclaim by denying under oath that he signed the certificate of title. He also alleged that the agreement set forth in Vaughn's counterclaim was invalid and unenforceable by virtue of the Statute of Frauds. On April 6, 1973 Clark filed his second amended petition, in which he added Vernell Richardson, Daniel Davis and Western Surety Company as defendants, and in which he alleged again the wrongful seizure of his automobile and its conversion by Vaughn and Davis by disposing of it to another person, which was made possible by Richardson's false jurat to the title certificate.

It appears from the undisputed evidence that Vaughn loaned $587.60 to Clark on December 23, 1970 to pay a bank which had a lien in that amount on the automobile in question. There is a dispute as to whether Clark signed the transfer form on the reverse side of his title certificate, but the trial court found that he did and that he delivered the certificate to Vaughn. It was shown also that Vaughn obtained a

new certificate of title in her name and seized the car on or about January 15, 1971. She kept it until December 1971, when she sold it for $700 to Davis, who within a few days sold it to another used car dealer for $750.

The trial court also found that Vaughn "repossessed" the automobile in accordance with the agreement and understanding between the parties and in accordance with her right conveyed to her by the certificate of title signed and delivered to her by Clark. This finding is supported by the testimony of Vaughn who, when asked whether there was ever a discussion or promise by Clark as to when or how he would repay the loan, testified that on the day of the loan he told her that his "old lady" was out of town and that "as soon as they would get back they would get the money right then and bring it to me * * *." On her deposition she testified that Clark told her that he had some money "coming by the first"[1] and that if he didn't pay her the car was "automatically" hers.

Mrs. Vaughn's application for the new certificate of title, and the certificate itself, show her as the owner and that there are no liens on the vehicle. She testified that she was willing to give the car back to Clark upon payment of her loan, and that she sold the car in December 1971 because she decided she was not going to get her money. Clark testified that he gave her his certificate of title to hold as assurance that he would not sell the car to a third party without paying her. It is clear from the pleadings of both parties and the undisputed evidence that both Clark and Vaughn intended that she should have the right to hold the certificate of title to the car until Clark repaid the $587.60 to her.

By his first point of error on appeal Clark attacks the take nothing judgment on the grounds that Vaughn had no lien on the

automobile under the terms of the Certificate of Title Act,[2] and had no enforceable security interest in the automobile within the provisions of the Texas Business and Commerce Code, and therefore had no right to retain or dispose of the automobile. He also points out that he had denied that he was in default and that the trial court did not find that he was in default. We overrule this point of error.

The rights of the parties are governed by the provisions of Tex.Bus. and Comm. Code Ann. V.T.C.A. (1968), and all references hereinafter made to section (§) numbers refer to that Code. In passing on the first point of error it is necessary for us first to determine whether Vaughn had a "security interest" in the automobile. "Security interest" is defined in § 1.201(37) as "an interest in personal property or fixtures which secures payment or performance of an obligation." Chapter 9 of the Code contains numerous regulations pertaining to secured transactions. Section 9.102 provides that the chapter applies "(1) to any transaction (regardless of its form) which is intended to create a security interest in personal property * *." In § 9.105(a)(8) "security agreement" is defined as "an agreement which creates or provides for a security interest;" and § 9.105(a)(9) defines a "secured party" as "a lender, seller or other person in whose favor there is a security interest, * * *."

Section 9.204 provides that a security interest cannot attach until (1) there is agreement that it attach, and (2) value is given, and (3) the debtor has rights in the collateral, but that it attaches as soon as all those events have occurred unless explicit agreement postpones the time of attaching. Section 9.203 provides generally, however, that a security interest is not enforceable unless (1) the collateral is in the possession of the secured party, or (2) the debtor has signed a security agreement describing the collateral.

1. We interpret this to mean January 1, 1971.

2. Texas Penal Code Ann. art. 1436–1 (Supp. 1972).

It is clear from the testimony of both parties that the requirements of § 9.204 were met and that a security interest attached. But was it an enforceable security interest within the purview of § 9.203? To be such the security agreement must have been in writing and signed by Clark, or Vaughn must have had lawful possession of the collateral.

■ The record does not include a written agreement signed by Clark stating specifically that Vaughn shall have a lien on or security interest in the automobile, but it does contain the title certificate, which as the trial court found, was signed by Clark and delivered to Vaughn. It contained a description of the collateral, and was undoubtedly intended by both parties to be written evidence of Vaughn's interest in the vehicle and, while the question is not free from doubt, we hold that it was sufficient to constitute a signed security agreement within the meaning of § 9.-203(a)(2). See Comment No. 4 on page 265, Vol. 3, of Vernon's Tex.Bus. and Comm.Code Ann. (1968). It follows that Vaughn did have an enforceable security interest in the automobile.

■ This brings us to the question of whether she lawfully enforced that interest. Section 9.503 reads in pertinent part as follows:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * *.

If Clark was in default she had the right, therefore, to take possession of the auto-mobile, for it was not "otherwise agreed." The court did not expressly find that Clark was in default, but did find that Vaughn's "repossession" was in accordance with the agreement of the parties. This finding is supported by Vaughn's testimony, as hereinabove shown. It contains an implied finding that the debt was overdue and that Clark was in default when she sold the car. Clark's tenth point of error, attacking the finding as being without support in the evidence and against the weight and preponderance of the evidence is without merit and is overruled.

In his thirteenth point of error Clark says that the trial court's refusal to find that Vaughn gave him no prior notice of her transfer of possession of the automobile to Davis is against the great weight and preponderance of the evidence. This point is overruled because we find no evidence in the record that such a notice was not given.

Points Nos. 2 through 6 complain of the insufficiency of the evidence to support the court's finding that Clark executed the transfer of the title certificate. As we find in the record sufficient competent testimony to support this finding, the points are overruled.

We have carefully examined and considered all of Clark's remaining points of error and, finding no merit in them, overrule them.

The record contains no evidence that any of the other defendants conspired with Vaughn, or were guilty of any other wrongful conduct which resulted in harm to Clark. The judgment in their favor was therefore correct.

Affirmed.