**STEAKLEY BROTHERS CHEVROLET, INC., Appellant,**

v.

**Hubert WESTBROOK, Appellee.**

**No. 5738.**

Court of Civil Appeals of Texas, Waco.

Nov. 10, 1977.

Rehearing Denied Dec. 8, 1977.

Stephen R. Fontaine, Sleeper, Williams, Johnston, Helm & Estes, Waco, for appellant.

Claude R. Giles, Giles & Makowsky, Maurice G. Walton, Haley, Fulbright, Winniford, Bice & Davis, Waco, for appellee.

## OPINION

McDONALD, Justice.

This is an appeal by defendant Steakley from judgment for actual and exemplary damages awarded plaintiff in a suit for conversion of a motorcycle.

Plaintiff Westbrook sued defendant Steakley alleging plaintiff owned a motorcycle; that prior to any payment being due thereon, defendant wrongfully repossessed and wrongfully converted such motorcycle. Plaintiff prayed for actual and exemplary damages.

Trial was to a jury which found:

1) Steakley converted Westbrook's Honda motorcycle.

2) The reasonable cash market value of such motorcycle on March 26, 1974 was $1700.

3) "Do you find from a preponderance of the evidence, if any, that Steakley * * acted wilfully and maliciously in taking the Honda motorcycle of Hubert Westbrook on March 26, 1974?

   "By the term 'wilfully and maliciously' is meant the intentional doing of a wrongful act without just cause or excuse; that is, if a wrongful act is intentionally done without just cause or ex-

cuse for believing it to be right or legal, or done with conscious disregard to the rights of others, then such act is wilfully or maliciously done. Willfulness and intent may be inferred by the actions and conduct of the wrongdoer.

"Answer: We Do."

If you have answered Issue 3 "We do," then answer Issue 4.

4. "What sum of money, if any, do you find from a preponderance of the evidence that Hubert Westbrook should be awarded against Steakley Brothers Chevrolet as exemplary damages?

" 'Exemplary damages' means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which may have been found by you as actual damages, and may include compensation for inconvenience and reasonable attorney's fees.

"Answer: $5000."

5. Westbrook had not defaulted on the retail installment sales contract covering his purchase of the Yamaha motorcycle.

The trial court rendered judgment on the verdict for plaintiff for $6700.

Defendant appeals on 5 points contending.

1) The trial court erred in overruling defendant's motion for judgment non obstante veredicto because, as a matter of law defendant was entitled to repossess the motorcycle, and therefore there was no conversion.

2) The trial court erred in overruling defendant's objection to the charge because the court incorrectly defined the term "exemplary damages" and refused the definition tendered by defendant.

3) There is no evidence to support the submission of Issue 4 on exemplary damages.

4) There is no evidence to support the submission of Issue 3 inquiring whether defendant acted wilfully and maliciously.

5) There is insufficient evidence to support the jury's answer to Issue 3.

On February 22, 1974, Westbrook purchased a 1974 Yamaha motorcycle from Steakley and signed a Retail Installment Contract-Motor Vehicle and Security Agreement, which Steakley assigned to the Westview National Bank. Westbrook had problems with the Yamaha and returned it to Steakley on March 9. At that time Westbrook traded the Yamaha in on a new 1974 Honda motorcycle signing a second Retail Installment Contract-Motor Vehicle and Security Agreement dated March 9, 1974. Westbrook asked Steakley's credit manager if a $52.95 payment he had made on the Yamaha had been credited. The credit manager called the bank and was advised that the bank had no record of the check. Mr. Westbrook thereafter stopped payment on the $52.95 check. Steakley in computing the amount Westbrook was to be given credit for on the Honda gave credit for the $52.95. Thereafter the Westview Bank advised Steakley that Westbrook had stopped payment on the $52.95 check (which they had apparently credited) and on March 26, 1974, 3 weeks before the first payment was due on the Honda, at a time when Westbrook had used both motorcycles for a total time of one month and four days, and had paid down in cash some $650., Steakley physically repossessed the Honda motorcycle from the parking lot at TSTI where plaintiff worked as a computer operator.

■ The second Retail Installment Contract-Motor Vehicle and Security Agreement, on the Honda, was transferred and assigned to Westview National Bank. This instrument provided among other matters that the holder could repossess when the security agreement was in default, and defines default. Thus the bank was the secured party, and Steakley had no authority to repossess even if grounds should exist under which the bank could take such action.

Defendant's 1st point contending defendant was entitled to repossess the motorcycle as a matter of law, is overruled because

Steakley was not holder of the security agreement; and further because there was no showing that the second security agreement was in default. See: *Murrell v. Griswold*, S.Ct., Okl., 338 P.2d 150.

■ Contention 2 asserts the trial court erred in not correctly defining "Exemplary damages" in the charge, and that the trial court failed to tell the jury that exemplary damages could only be awarded if defendant's act partook of a wanton and malicious nature. The trial court submitted Issue 3 (with instruction) inquiring of the jury if defendant acted wilfully and maliciously in taking the Honda motorcycle on March 26; (to which the jury answered "We Do") and submitted Issue 4 on exemplary damages conditioned on an affirmative answer to Issue 3; and included further instructions as to what might be considered in fixing exemplary damages. Issue 3 with its instruction considered together with Issue 4 and its instruction, contains proper and correct instruction on exemplary damages. *Southwestern Investment Co. v. Alvarez*, Tex., 453 S.W.2d 138; *Ogle v. Craig*, Tex., 464 S.W.2d 95; *Courtesy Pontiac, Inc. v. Ragsdale*, Tex.Civ.App. (Tyler) NRE, 532 S.W.2d 118.

Contention 3 asserts there is no evidence to support the submission of Issue 4 and Contention 4 asserts there is no evidence to support the submission of Issue 3.

■ Steakley knew or should have known that it had no legal right to repossess Westbrook's motorcycle having transferred and assigned the security agreement to the Westview Bank. Ill will may be implied from a knowing conversion of another's property without a legal right thereto. *Courtesy Pontiac,* supra. And the record reflects Steakley acted wilfully and in disregard for Westbrook's rights in which event exemplary damages are authorized. *Roy Gladen Buick, Inc. v. Sterling*, Tex.Civ.App. (Waco) NRE, 524 S.W.2d 590; *First Security Bank & Trust Co. v. Roach*, Tex.Civ.App. (Dallas) NRE, 493 S.W.2d 612.

Steakley repossessed plaintiff's motorcycle by picking it up off a parking lot where plaintiff was employed, when plaintiff had paid $650. down on the motorcycle, had it just 34 days, and was not delinquent in a single payment, and when Steakley didn't own the security agreement.

■ Contention 5 asserts the evidence factually insufficient to support the jury's answer to Issue 3. This point was not raised in motion for new trial and has been waived; we further hold the evidence is factually sufficient and ample to sustain the jury's answer.

All defendant's points are overruled.

AFFIRMED.