FIRST NATIONAL BANK OF McALLEN, Appellant,

v.

Juan Manuel BROWN, Appellee.

No. 2182cv.

Court of Appeals of Texas, Corpus Christi.

Sept. 9, 1982.

Rehearing Denied Oct. 21, 1982.

William E. Corcoran, Cardenas & Whitis, McAllen, for appellant.

Reynaldo Ortiz, McAllen, for appellee.

Before UTTER, KENNEDY and GON-ZALEZ, JJ.

OPINION

UTTER, Justice.

This is an appeal from a judgment entered on a jury verdict in favor of the plaintiff, Juan Manuel Brown. Appellee sued appellant, First National Bank of McAllen, for conversion of his 1977 Chevrolet Caprice automobile and for exemplary damages. Appellant counterclaimed for the amount owing on a loan on which appellee had defaulted. The jury awarded appellee $3,500.00 in actual damages and $3,900.00 in punitive damages. The jury did not award the bank any money on its counterclaim. We affirm in part and reverse and remand in part.

The sufficiency of the evidence is challenged in several respects necessitating a discussion of the facts of the case. On March 20, 1979, plaintiff went to the appellant's bank to consolidate the loans on his two cars, a 1978 Pontiac Bonneville and the 1977 Caprice. The bank consolidated both loans and listed both cars as collateral on the bank worksheet. However, in drafting the security agreement, the bank omitted

the Caprice automobile as collateral and included only the Pontiac Bonneville. On February 26, 1980, after the appellee became delinquent in his payment, the bank repossessed the Caprice. Although the Caprice was not listed in the security agreement, the bank was in possession of a Certificate of Title purportedly signed by the appellee which listed them as the lien holder. The appellee denied that he had ever signed the Certificate of Title. Testimony at trial indicated that while there was no actual discussion of the security for the new loan, the appellee felt that the 1977 Chevrolet Caprice would be included as collateral for the loan.

■ The appellant maintains in its initial point of error that the jury's answer to Special Issue Number Eight is against the great weight and preponderance of the evidence. Special Issue Number Eight is as follows:

## SPECIAL ISSUE NO. 8

What sum of money, if any, do you find to be owed to Defendant, FIRST NATIONAL BANK OF McALLEN, as a result of the default of the Plaintiff, JUAN MANUEL BROWN, in the payment of his note?

Answer in dollars and cents.

We, the Jury, answer the above issue $0.00.

During the appellee's testimony, the appellee admitted to the existence of the debt at the time of default and stated that he felt that the debt was between $1,900.00 and $2,100.00. The bank presented a substantial amount of testimony showing appellee's indebtedness at the time of default and placed the figure at $3464.35. The fact that there was an indebtedness due appellant by appellee is uncontroverted. Only the amount was in issue. The answer returned by the jury to Special Issue Number Eight is so clearly against the great weight and preponderance of the evidence as to be manifestly unjust. *Texas & N.O.R. Co. v. Burden*, 203 S.W.2d 522 (Tex.1947); *Traylor v. Goulding*, 497 S.W.2d 944 (Tex.1973); O'Connor, Evidence Points on Appeal, 37 Tex.B.J. 839 (1974).

The appellant's first point of error is sustained.

■ Appellant contends in its second point of error that there is no evidence or that the evidence is insufficient to warrant the recovery of punitive damages. The jury found that appellant acted wilfully and maliciously in the taking of the 1977 Chevrolet Caprice automobile. In a case where there is a wilful and knowing conversion under circumstances showing a lack of good faith, malice may be implied. *Geders v. Aircraft Engine and Accessory Co.*, 599 S.W.2d 646 (Tex.Civ.App.—Dallas 1980, no writ). Also, in cases where the defendant knew or should have known that it had no legal right to repossession, ill will or malice may be implied from the knowing conversion of another's property without a legal right thereto. *Steakley Bros. Chevrolet, Inc. v. Westbrook*, 558 S.W.2d 544 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.); *See also Christopher v. General Computer Systems, Inc.*, 560 S.W.2d 698 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.); *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118 (Tex.Civ.App.—Tyler 1975; writ ref'd n.r.e.).

In the instant case, the appellant noted on its loan worksheet that the 1977 Caprice would be included as collateral for appellee's loan. However, the appellant clearly had the security agreement in its possession and thus knew or should have known that the 1977 Caprice was not listed thereon.

The bank then attempted to justify the repossession of appellee's 1977 Caprice by showing that even though the 1977 Caprice was not listed on the security agreement that they had a right of repossession because appellee had signed a Certificate of Title showing appellant as the lien holder. Appellant's attorney questioned Mr. Horacio Pena, the loan officer who negotiated appellee's loan, in regard to the signature of appellee on the Certificate of Title as follows:

Q: Mr. Pena, do you recall whether or not Mr. Brown signed such a certifi-

cate, or application for Texas Certificate of Title to transfer a lien or to give the Bank a lien on the 78 Bonneville?

A: Sir, I don't recall for a fact, yes or no.

In addition, Mrs. Leticia Hinojosa, a bank employee who notarized appellee's signature on the Certificate of Title stated that she did not recall witnessing the signature of appellee. In cross-examination she testified:

Q: So in some instances the officer will have the customer sign the papers in his office and later when the customer has left, he will ask you to notarize them, is that correct? So in other words, in some instances you do not actually witness the signature?

A: That's correct.

No bank official testified that they recalled seeing appellee sign the Certificate of Title. The only testimony by which appellant attempted to identify the signature was a bank official who stated that it was similar in some respects to the known signature of appellee and could have been written by him. The appellee unequivocally denied that he signed a Certificate of Title thus implying that the signature was a forgery. The jury's answer to the exemplary damage issue leads to the conclusion that the jury believed the signature on the Certificate of Title was a forgery and that the bank had no legal right to repossess appellee's automobile.

■ In reviewing a "no evidence" point, this Court may consider only the evidence, if any, and the inferences thereon tending to support the jury findings in question and disregard all evidence which would lead to a contrary result. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Salazar v. Hill,* 551 S.W.2d 518 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). A careful review of the record considering only the evidence and inferences in support of the findings and disregarding all evidence to the contrary indicates there was evidence to support the jury's answers to the special issues as to exemplary damages.

■ In passing on factual sufficiency points, this Court must examine the entire record to determine whether there is any evidence of probative value to support the jury's findings. *In re Kings's Estate,* 244 S.W.2d 660 (Tex.1951). There is clearly sufficient evidence to support the jury's answers to special issues as to exemplary damages. *See Steakley Bros. Chevrolet Inc. v. Westbrook, supra.*

Appellant's second point of error is overruled.

■ Appellant complains in his third point of error that there was no evidence and insufficient evidence to warrant the submission of Special Issue Number Two to the jury inquiring about actual damages. The appellee testified at trial that his car was worth "around $3,000.00". Appellant contends that this testimony alone is insufficient to warrant the submission of a special issue since it fails to show the fair market value of the automobile in Hidalgo County, Texas, at the time of the conversion. Similar contentions were made and overruled in *Classified Parking System v. Kirby,* 507 S.W.2d 586 (Tex.Civ.App.—Houston [14th Dist.], no writ). The owner of personal property can testify to its value. *Chrysler-Plymouth City, Inc. v. Guerrero,* 620 S.W.2d 700 (Tex.Civ.App.—San Antonio 1981, no writ). Where the owner of the property is the witness testifying to its value, the rules pertaining to establishing the value of the property in question should be liberally construed. *Classified Parking System v. Kirby, supra.* There was sufficient evidence to justify the submission of Special Issue Number Two on actual damages.

■ Finally, appellant contends that the trial court erred in failing to grant an instructed verdict at the close of the appellee's case. In this respect, appellant cites this Court to *Clark v. Vaughn,* 504 S.W.2d 550 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.) for the proposition that a Certificate of Title is a sufficient writing to qualify as an enforceable security interest. However,

in this case, there was a significant question as to whether the appellee ever signed the document. The court in *Clark v. Vaughn, supra,* pointed out that the trial court had found that the appellee had indeed signed the certificate in that case. In the instant case there was a fact issue and the mere existence of a Certificate of Title with a contested signature did not entitle appellant to an instructed verdict. The appellant's fourth point of error is overruled.

The judgment of the trial court is AFFIRMED except insofar as it effects appellant's counterclaim in which respect it is REVERSED and REMANDED to the trial court pursuant to Rule 434 Tex.R.Civ.P. for a new trial on the issue of the amount of damages to be awarded on appellant's counterclaim.

GONZALEZ, Justice, dissenting.

I dissent. There is no evidence that the Bank acted with malice, fraud, oppression, bad faith, or with a conscious indifference or wanton disregard of plaintiff's rights. *Ogle v. Craig,* 464 S.W.2d 95 (Tex.1971). *Gardner v. Jones,* 570 S.W.2d 198 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ); *Ford Motor Credit Company v. Washington,* 573 S.W.2d 616 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.).

It is undisputed that Brown owed the money and that he was in default at the time of the repossession. Also, as shown by the following testimony, Brown intended that the Bank have a security interest in the vehicle.

Q. Did Mr. Pena [loan officer] ever tell you, 'if you do not pay, we will repossess?'
A. No, I understood that because, I don't know that much about law, but if you don't pay whatever you buy if it is tangible property they will take it away from you if it serves as collateral, so I understood that, he didn't tell me anything about that....
Q. On March 20, 1979, how many vehicles did you own?
A. Two.
Q. And which vehicles were those?
A. It was a 1978 Pontiac Bonneville and a 1977 Caprice Chevrolet.

Q. And these were the two vehicles that were the subject of the loan transaction with First National Bank of McAllen, is that correct?
A. Yes, sir....
Q. Do you recall signing any kind of security agreement?
A. Yes, sir.
Q. Do you recall what collateral was named in that security agreement as repayment for this loan?
A. At that time I didn't even read the contract. I just signed it and took off.
Q. Where did you go?
A. I went to Corpus. Several weeks later I went through the papers and I noticed that they didn't put the Caprice. So it was, well not exactly my duty, but I knew the Bank had made a mistake, and now I know about it, oh, gosh, they forgot to put the Caprice so I'm going back and let them know that they forgot to put the Caprice car in there, because I want to give credit to whoever credit gets, so I have to go back to the Bank.... So, I said, well, I will try to phone them, in fact I never did call them about the mistake ....
Q. Mr. Brown, at the time that you signed the Security Agreement did the Bank ever tell you that they were going to obtain a security interest in your 1977 Chevrolet automobile?
A. No, sir, I understood that they would, but they didn't tell me.

\* \* \* \* \* \*

Q. You testified you were a customer of the Bank since 1976 and as a result of your transactions with the Bank, you understood that they would have a lien in your Caprice if they paid off the S.I.C. note?
A. Yes, sir.

The Bank also was in possession of a Certificate of Title wherein it was lien holder. Absent a finding of fraud or forgery on the part of the Bank, the Bank acted in good faith. Under these circumstances, even though the repossession may have

been wrongful, the record does not support an award for punitive damages.

I agree with the majority opinion with the exception that I would reverse and render a take-nothing judgment on the issue of punitive damages.

## OPINION ON MOTION FOR REHEARING

UTTER, Justice.

On motion for rehearing, appellant contends that the trial court's judgment should be set aside because it exceeds the County Court's jurisdictional amount. We disagree. Plaintiff-appellee, in his pleadings, sought a specific amount of actual damages well within the County Court's jurisdictional limit and "(a)n award of exemplary damages against Defendant in a sum determined by the trier of fact." Appellant did not file any special exceptions or a plea to the jurisdiction to ascertain the amount of exemplary damages sought by appellee. After hearing evidence, the jury awarded plaintiff-appellee $3,500.00 as actual damages and $3,900.00 as exemplary damages.

The jurisdiction of County Courts at Law is limited to cases where the amount in controversy does not exceed $5,000.00. Tex.Rev.Civ.Stat.Ann. art. 1970a (Vernon Supp.1982). Whether jurisdiction exists in the County Court at Law is determined by the amount alleged in the plaintiff's petition. *Universal Life and Accident Insurance Company v. Fields*, 422 S.W.2d 722 (Tex.1967). Plaintiff-appellee, in its petition, sought recovery of an amount within the County Court at Law's jurisdictional amount. Jurisdiction attached and no subsequent fact or event defeats the court's jurisdiction over the claim. *Kitchen Designs, Inc. v. Wood*, 584 S.W.2d 305 (Tex. Civ.App.—Texarkana 1979, writ ref'd n.r. e.); *Isbell v. Kenyon-Warner Dredging Co.*, 113 Tex. 528, 261 S.W. 762 (1924).

A number of cases from the Supreme Court have made it clear that the limitation on amount in controversy imposed by article 1970(a) is not a limitation on the power to render judgment. In those cases, the Court has consistently rejected the argument that a county court at law lacks jurisdiction to render judgment for more than $5,000.00, so long as the original amount in controversy is within the jurisdictional limit. *Mr. W. Fireworks, Inc. v. Mitchell*, 622 S.W.2d 576 (Tex.1981); *Flynt v. Garcia*, 587 S.W.2d 109 (Tex.1979); see also *Haginas v. Malbis Memorial Foundation*, 354 S.W.2d 368 (Tex.1962); *Standard Fire Ins. Co. v. Stigger*, 635 S.W.2d 667 (Tex.Civ.App.— Dallas 1982, no writ).

Appellant's point of error is overruled.