In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00065-CV
______________________________


AMERICAN HOME ASSURANCE COMPANY, Appellant
Â 
V.
Â 
TIFFANY S. HEMPERLEY, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 03C0698-102


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â This is an appeal by American Home Assurance Company (AHAC) from a summary
judgment. Appellee, Tiffany Hemperley, asks this Court to dismiss the appeal for want of
jurisdiction because the summary judgment does not dispose of all the issues to the
litigation.
Â Â Â Â Â Â Â Â Â Â Hemperley was employed at Wal-Mart and filed for worker's compensation benefits
for an injury on the job alleged to have occurred August 5, 2002. AHAC, Wal-Mart's
workers' compensation insurance carrier, disputed Hemperley's claim, but not within seven
days after receiving written notice of the injury.


 Hemperley pursued her administrative
remedies before the Workers' Compensation Commission. On November 12, 2002, a
benefit review conference


 was held to mediate resolution of the disputed issues, but the
parties were unable to reach an agreement. A contested case hearing


 was held before
a hearing officer January 2, 2003. 
Â Â Â Â Â Â Â Â Â Â AHAC appealed the decision of the hearing officer to an appeals panel.


 The
appeals panel affirmed the decision of the hearing officer. AHAC filed suit seeking judicial
review


 April 25, 2003. AHAC and Hemperley filed motions for summary judgment. The
trial court granted Hemperley's motion and denied AHAC's motion, and ordered a hearing
to be set to determine attorney's fees. AHAC appeals. 
Â Â Â Â Â Â Â Â Â Â The general rule is that a final and appealable judgment must determine the entire
controversy, disposing of all the parties and issues in a case. N. E. Indep. Sch. Dist. v.
Aldridge, 400 S.W.2d 893, 895 (Tex. 1966); Wagner v. Warnasch, 156 Tex. 334, 295
S.W.2d 890, 892 (1956). A summary judgment, unlike a judgment signed after a trial on
the merits, is presumed to dispose of only those issues expressly presented, not all issues
in the case. City of Beaumont v. Guillory, 751 S.W.2d 491, 492 (Tex. 1988). A summary
judgment that fails to dispose expressly of all parties and issues in the pending suit is
interlocutory and not appealable unless a severance of that phase of the case is ordered
by the trial court. Id. In the absence of an order of severance, the party against whom an
interlocutory summary judgment has been rendered has his or her right of appeal when,
and not before, such partial summary judgment is merged in a final judgment disposing of
all parties and issues. Id. 
Â Â Â Â Â Â Â Â Â Â In the present case, the summary judgment against AHAC did not dispose of the
issue of attorney's fees. The record does not show that the trial court ever set a hearing
date to decide on the attorney's fees, nor does the record show the issue was severed for
a separate trial. Thus, this is an interlocutory appeal, a nonappealable judgment.
Â Â Â Â Â Â Â Â Â Â Accordingly, AHAC's appeal is dismissed for want of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â February 10, 2005
Date Decided:Â Â Â Â Â Â Â Â Â February 11, 2005




e specific
language of Craddock that a new trial should be granted to a defaulting defendant if his
motion "sets up a meritorious defense," Craddock, 133 S.W.2d at 126, does not mean the
motion should be granted if it merely alleges the defendant "has a meritorious defense." 
Ivy v. Carrell, 407 S.W.2d 212, 214 (Tex. 1966). The motion must allege facts which in law
would constitute a defense to the cause of action asserted by the plaintiff and must be
supported by affidavits or other evidence proving prima facie that the defendant has such
meritorious defense. Id.; City of Fort Worth v. Gause, 129 Tex. 25, 101 S.W.2d 221, 222
(1937); Holliday v. Holliday, 72 Tex. 581, 10 S.W. 690, 692 (1889); Dowell v. Winters, 20
Tex. 793 (1858); Foster v. Martin, 20 Tex. 118 (1857). This much is necessary to prevent
the reopening of cases to present fictitious or unmeritorious defenses. But once these
requirements are met, it is improper to try the defensive issues brought forth in the motion
or the pleadings. Ivy, 407 S.W.2d at 214.

 In his affidavit, Lilly states he and Tolar had an oral agreement whereby Tolar
granted Lilly a security interest in Tolar's truck and welding machine in order to secure
Tolar's son's performance on two bail bonds written to secure the release of Tolar's son
from jail. Lilly states that the failure of Tolar's son to appear in court constituted a default
of the security agreement. Lilly also included in his motion for new trial a letter written in
response to a complaint about J & M Pawn by Tolar's sister sent to the office of the
Consumer Credit Commissioner, a state agency. The letter from the agency stated, "From
all indications, Mr. Emmanuel Lilly and Mr. Rodney Tolar agreed to secure the bond with
the title to the 1992 Chevy Cheyenne truck." The Commissioner's office also concluded
that it appeared a verbal agreement existed between Tolar and Lilly, as evidenced by the
"CONTRACT TO INDEMNIFY," which makes Tolar the indemnitor on his son's bond,
requiring payment by Tolar in the event of a bond forfeiture, and the "POWER OF
ATTORNEY TO TRANSFER MOTOR VEHICLE," both dated March 20, 1999, the day the
bonds were issued. 

 The letter from the Commissioner's office is not conclusive evidence that a valid
security agreement existed between Tolar and Lilly. Lilly contends he had an oral security
agreement with Tolar, giving him a security interest in Tolar's truck, made at the time they
entered into the contract to indemnify. Under the Texas Business and Commerce Code,
security interests are unenforceable against the debtor with respect to the collateral and
do not attach unless the collateral is in the possession of the secured party pursuant to an
agreement, or the debtor has signed a security agreement which contains a description of
the collateral, value has been given, and the debtor has rights in the collateral. Tex. Bus.
& Com. Code Ann. § 9.203 (Vernon 1991). (1) Oral security interests are unenforceable
because they do not comply with the statute requiring a writing signed by the debtor. Id.;
see Mosley v. Dallas Entertainment Co., 496 S.W.2d 237 (Tex. Civ. App.-Tyler 1973, writ
dism'd). 

 Here, there are no documents attached to the motion for new trial which show that
an enforceable security agreement was created. Although Tolar apparently signed a
power of attorney, referencing his truck, on the date the bond issued, such does not grant
a security interest in Tolar's truck or identify the debt secured. See Tex. Bus. & Com. Code
Ann. Â§ 9.203. There is also a title to the truck in the record dated April 17, 1999, the date
Tolar pawned his truck the second time, but this document is unsigned and does not create
a security interest. Id.; see Tex. Bus. & Com. Code Ann. Â§ 9.202 (Vernon 1991). (2) Lilly
failed to provide evidence of an enforceable security agreement. 

 Lilly's motion for new trial and affidavit further fail to provide any evidence the
granting of a new trial will not cause a delay or injure Tolar. See Craddock, 133 S.W.2d
at 126. Lilly's affidavit states the granting of a new trial will not cause significant delay or
injury to Tolar, but these assertions are not supported by any evidence. Lilly asserted in
his September 2001 motion for new trial that he would probably be able to participate in
a trial in February 2002. The trial court did not abuse its discretion in implicitly finding that
a six-month wait would constitute a "delay." Lilly's third and fourth points of error are
overruled.

 In his remaining points of error, Lilly contends the evidence is both legally and
factually insufficient to support the judgment. In order to obtain a post-answer default
judgment, a plaintiff must prove all aspects of the case, as in a case of a judgment
following a trial. Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex. 1979). 

 When deciding legal sufficiency, in determining whether there is no evidence of
probative force to support a fact-finder's finding, we must consider all of the evidence in the
record in the light most favorable to the party in whose favor the verdict has been rendered,
and we must apply every reasonable inference that could be made from the evidence in
that party's favor. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). 
In this review, we disregard all evidence and inferences to the contrary. Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc.,
786 S.W.2d 670, 671 (Tex. 1990). A no evidence point will be sustained when 1) there is
a complete absence of evidence of a vital fact, 2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact, 3) the
evidence offered to prove a vital fact is no more than a mere scintilla, or 4) the evidence
conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998).

 More than a scintilla of evidence exists when the evidence supporting the finding,
as a whole, rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions. Burroughs Wellcome Co., 907 S.W.2d at 499. If we find some
probative evidence, we will test the factual sufficiency of that evidence by examining the
entire record to determine whether the finding is clearly wrong and unjust. 

 In reviewing a point of error claiming the evidence is factually insufficient to support
the fact-finder's answer to a question, we consider all of the evidence, including evidence
contrary to the fact-finder's verdict. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442,
445 (Tex. 1989); Southwestern Elec. Power Co. v. Martin, 844 S.W.2d 229, 233 (Tex.
App.-Texarkana 1992, writ denied). We then determine "whether the verdict is so against
the great weight and preponderance of the evidence as to be manifestly wrong or unjust." 
C & D Robotics, Inc. v. Mann, 47 S.W.3d 194, 199 (Tex. App.-Texarkana 2001, no pet.)
(citing Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996), and Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986)). In reviewing all the evidence, we may not interfere with the fact-finder's resolution of conflicts in the evidence. C & D Robotics, Inc., 47 S.W.3d at 199. 

 In points of error five and six, Lilly contends the evidence is legally and factually
insufficient to support the trial court's finding of conversion. In determining the sufficiency
of the evidence, we look only to the evidence before the trial court at the time it rendered
judgment. See Merrell Dow Pharms., Inc., 953 S.W.2d at 711-12. Conversion is the
"wrongful exercise of dominion and control over another's property in denial of or
inconsistent with his rights." Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997);
Bandy v. First State Bank, 835 S.W.2d 609, 622 (Tex. 1992). 

 In support of a claim of conversion, a plaintiff must prove: 1) the plaintiff owned, had
legal possession of, or was entitled to possession of the property; 2) the defendant
assumed and exercised dominion and control over the property in an unlawful and
unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; 3) the
plaintiff made a demand for the property; and 4) the defendant refused to return the
property. Ojeda v. Wal-Mart Stores, Inc., 956 S.W.2d 704, 707 (Tex. App.-San Antonio
1997, pet. denied); Apple Imports, Inc. v. Koole, 945 S.W.2d 895, 899 (Tex. App.-Austin
1997, writ denied); Whitaker v. Bank of El Paso, 850 S.W.2d 757, 760 (Tex. App.-El Paso
1993, no writ). Although normally required, a demand for the return of the property and a
refusal to do so are not necessary when the acts of the possessor manifest a clear
repudiation of the plaintiff's rights. Edmunds v. Sanders, 2 S.W.3d 697, 703 (Tex.
App.-ElÂ Paso 1999, pet. denied). Wrongful intent on the part of the possessor is not
required in a conversion case. Winkle Chevy-Olds-Pontiac, Inc. v. Condon, 830 S.W.2d
740, 746 (Tex. App.-Corpus Christi 1992, writ dism'd). 

 The evidence clearly shows Tolar pawned his truck to J & M Pawn Shop MarchÂ 20
and reclaimed it April 6, 1999. Tolar again pawned his truck to J & M Pawn Shop April 17,
1999, and reclaimed it (via his sister) June 10, 1999. This evidence shows Tolar owned
and was entitled to possession of the truck. Lilly clearly took control of the truck, as
evidenced by his letters to Tolar stating, "I HAD YOUR TRUCK PICKED UP. YOU MUST
PAY THE BALANCE WITHIN (10) DAYS OR YOUR TRUCK WILL BE SOLD." There is
nothing in Lilly's statement or in the record to indicate the "balance" owed. Tolar
demanded the return of his truck by a letter from his attorney. In May 2000, Lilly sold
Tolar's truck. The evidence is legally sufficient to support the trial court's finding of
conversion.

 No controverting evidence was presented at trial, nor was a defense put forth. In
his brief, Lilly relies on evidence attached to his affidavit on his motion for new trial. 
However, this evidence was not a part of the record when the trial court rendered
judgment. The evidence before the trial court is factually sufficient to support the finding
of conversion.

 In Lilly's points seven and eight, he contends the evidence is legally and factually
insufficient to support the trial court's finding of breach of contract. A breach of contract
occurs when a party fails to perform an act that it expressly promised to do. Methodist
Hosps. of Dallas v. Corporate Communicators, Inc., 806 S.W.2d 879, 882 (Tex.
App.-Dallas 1991, writ denied). Lilly and Tolar entered into the "CONTRACT TO
INDEMNIFY" March 20, 1999, for the issuance of two bonds for Tolar's son. The contract
makes no reference to the truck. Rather, it provides that, in the event of a bond forfeiture,
Tolar must pay $500.00 a month until the bond is repaid. The only agreements regarding
the truck between Tolar and Lilly that were in evidence at the time of trial concerned the
two times Tolar pawned his truck, each time for $400.00, to J & M Pawn Shop, once
MarchÂ 20, 1999, and again April 17, 1999. The evidence clearly shows that in each
instance Tolar repaid the $400.00, plus interest, and reclaimed his truck. The only
remaining contract between Tolar and Lilly was the bond agreement. 

 Tolar paid the fee for the bond in installments, and the receipts admitted into
evidence show the balance was timely paid and there was a balance of zero April 5, 1999. 
The contract provided that, if a bond forfeiture occurred, Tolar was to pay $500.00 per
month for the forfeiture. There is nothing in the "CONTRACT TO INDEMNIFY" mentioning
the truck or using the truck as collateral for the contract. On June 15, 1999, the county
court at law judge signed one order of bond forfeiture, but also signed an order of dismissal
regarding that same bond forfeiture April 24, 2000. On July 21, 1999, the judge of the
188th Judicial District Court signed an order of bond forfeiture, but also signed an order
setting aside that forfeiture February 16, 2000. A bond is forfeited when the trial court
signs the judgment nisi. Dees v. State, 865 S.W.2d 461, 463 (Tex. Crim. App. 1993). 
Because the trial courts signed what amounted to judgments nisi, Tolar's son forfeited the
two bonds he had filed in the respective courts. 

 The contract between Lilly and Tolar provided that, in the event of a bond forfeiture,
Tolar was to pay Lilly $500.00 per month beginning the fifth day after forfeiture. There is
no evidence Lilly ever had to pay on the bond forfeiture. There is also no evidence that
Lilly demanded the payment of the $500.00 per month or that Tolar failed to properly pay
under the contract. However, Lilly's communications with Tolar indicate he took the truck
because of the bond forfeitures. The contract clearly sets out payment of the $500.00 per
month as Lilly's only remedy in the event of bond forfeiture. The evidence is legally and
factually sufficient to support the trial court's finding that Lilly breached the contract. Lilly
breached the contract by utilizing a remedy-taking possession of Tolar's truck-not
authorized in that agreement. There was no evidence of any remedy available to Lilly,
other than to collect $500.00 per month, in the event of a bond forfeiture. 

 In points nine and ten, Lilly contends the evidence is legally and factually insufficient
to support the trial court's finding of unfair debt collection practices. Tolar sued Lilly for
violations of Texas debt collections practices under Chapter 392 of the Texas Finance
Code. Tolar complained Lilly violated Section 392.301 by threatening seizure,
repossession, or sale of Tolar's truck without proper court proceedings and threatening to 
take actions prohibited by law. Tolar also alleged that Lilly violated Section 392.304 by
failing to disclose clearly in any communication that Lilly was attempting to collect a
consumer debt and that Lilly misrepresented the character, extent, or amount of the
consumer debt. See Tex. Fin. Code Ann. Â§Â§ 392.301, 392.304 (Vernon 1998). 

 We first determine whether Lilly was a debt collector under the Finance Code. A
debt collector is a "person who directly or indirectly engages in debt collection . . . ." Tex.
Fin. Code Ann. Â§ 392.001(6) (Vernon Supp. 2002). The evidence presented at trial proved
Lilly believed Tolar owed him a debt and was attempting to collect that debt. The Code
also applies to entities attempting to collect their own debts. Monroe v. Frank, 936 S.W.2d
654, 660 (Tex. App.-Dallas 1996, writ dism'd). The evidence is legally and factually
sufficient to support the trial court's implicit finding that Lilly was a debt collector. 

 Was Tolar a consumer under the Code? The Code defines consumer debt as "an
obligation, or an alleged obligation, primarily for personal, family, or household purposes
and arising from a transaction or alleged transaction." Tex. Fin. Code Ann. Â§ 392.001(2)
(Vernon Supp. 2002). The contract created a debt which Tolar owed Lilly, provided certain
conditions were met. The evidence showed Lilly obtained the bail bond (debt) to help get
a family member, his son, out of jail. A reasonable fact-finder could find that Tolar derived
benefit for himself from the transaction. See Monroe, 936 S.W.2d at 660. Thus, there was
legally and factually sufficient evidence to support a finding that Tolar incurred the debt for
personal purposes.

 It is a violation of the Code for a debt collector to fail to disclose clearly in any
communication with the debtor that the debt collector is attempting to collect a consumer
debt. Tex. Fin. Code Ann. Â§ 392.304(a)(5). The correspondence in the record regarding
the collection of the debt fails to reflect the amount of the debt owed and fails to reflect that
Lilly was attempting to collect a consumer debt. The evidence is legally and factually
sufficient to support the trial court's finding that Lilly violated the Texas Finance Code.

 In his eleventh, twelfth, and thirteenth points of error, Lilly contends the evidence is
both legally and factually insufficient to support the award of $19,000.00 as the fair market
value of Tolar's truck and welding unit. In an action for conversion, a successful plaintiff
is entitled to money damages equivalent to the fair market value of the property converted. 
Cash Am. Int'l Inc. v. Bennett, 35 S.W.3d 12, 21 (Tex. 2000); Imperial Sugar Co. v.
Torrans, 604 S.W.2d 73, 74 (Tex. 1980). 

 Lilly concedes that the evidence presented at the hearing on damages supports the
trial court's award of $19,000.00 for fair market value. However, he urges us to look at the
evidence he presented in his motion for new trial. As stated above, in considering whether
the evidence is legally or factually sufficient to support the judgment, we look to the
evidence in the record at the time the judgment was rendered. 

 Tolar testified that he believed the market value of the truck was between
$12,000.00 and $15,000.00 and that the welder, according to Oilfield Welders Supply, was
worth $6,800.00. Also entered into evidence was the "Kelley Blue Book" value of
$8,015.00 for a 1992 Chevrolet truck. The evidence is both legally and factually sufficient
to support the award of $19,000.00 for the fair market value of the truck and attached
welding unit.

 In his fourteenth through sixteenth points of error, Lilly contends the evidence is
legally and factually insufficient to support the award of $30,000.00 for loss of income for
Tolar, who was a self-employed welder. Lilly took Tolar's truck in October 1999, and the
trial was held in August 2001. 

 Damages for conversion may include losses or expenses necessary to compensate
the plaintiff for all actual losses or injuries sustained, not merely the reasonable market
value of the property, as a natural and proximate result of the defendant's wrongdoing. 
Soto v. Sea-Road Int'l, Inc., 942 S.W.2d 67, 75 (Tex. App.-Corpus Christi 1997, writ
denied); Multi-Moto Corp. v. ITT Commercial Fin. Corp., 806 S.W.2d 560, 566 (Tex.
App.-Dallas 1990, writ denied); First Nat'l Bank v. Gittelman, 788 S.W.2d 165, 168-69
(Tex. App.-Houston [14th Dist.] 1990, writ denied); Virgil T. Walker Constr. Co. v. Flores,
710 S.W.2d 159, 161 (Tex. App.-Corpus Christi 1986, no writ); Groves v. Hanks, 546
S.W.2d 638, 647 (Tex. Civ. App.-Corpus Christi 1976, writ ref'd n.r.e.). Loss of earnings
is recoverable for conversion. See Higgins v. Intraworld Dev. Corp., 498 S.W.2d 234, 235-36 (Tex. Civ. App.-Houston [1st Dist.] 1973, no writ). Evidence of the plaintiff's actual
earnings before the injury is required, as is evidence of actual or possible earnings
following injury. City of Rosenberg v. Renken, 616 S.W.2d 292, 293-94 (Tex. Civ.
App.-Houston [14th Dist.] 1981, no writ). 

 Lilly contends the evidence of past earnings is so lacking it amounts to no evidence. 
Tolar presented evidence via oral testimony and invoices that, in a six-month period, he
usually made $17,390.00 as a welder. He testified that in 1997 he earned between
$35,000.00 and $40,000.00 and that he made about the same in 1998. In 2000, he
worked odd jobs and, at the time of trial, worked for Warren Fabrication making $16.00 an
hour. He testified his current income would double if he had the use of his welding
machine. The evidence is legally and factually sufficient to support the award of
$30,000.00 for loss of income. 

 Lilly also complains Tolar did not properly mitigate his damages. Mitigation is a
defensive issue on which Lilly bore the burden of proof at trial. See Gulf Consol. Int'l, Inc.
v. Murphy, 658 S.W.2d 565, 566 (Tex. 1983); Gorges Foodservice, Inc. v. Huerta, 964
S.W.2d 656, 669 (Tex. App.-Corpus Christi 1997, no pet.). Because Tolar presented more
than a scintilla of evidence regarding his future income, the burden shifted to Lilly to show
Tolar failed to mitigate his damages. Although Tolar had the burden to prove his damages,
the burden rested on Lilly to show Tolar's failure to properly mitigate the damages. 
Because Lilly did not, at trial, attack Tolar's failure to mitigate his damages, this point is
overruled. 

 In points of error seventeen through twenty-five, Lilly contends the evidence is
legally and factually insufficient to support the award of attorney's fees of $25,493.00 for
trial, $10,000.00 for appeal to this Court, and $15,000.00 if appealed to the Texas
Supreme Court. Lilly also contends Tolar did not properly present his demand for
attorney's fees and is therefore not entitled to them. 

 Reasonable attorney's fees are recoverable in a suit for breach of contract. Tex.
Civ. Prac. & Rem. Code Ann. Â§ 38.001(8) (Vernon 1997). We review the trial court's
granting of attorney's fees for breach of contract under an abuse of discretion standard of
review. AU Pharm., Inc. v. Boston, 986 S.W.2d 331, 337 (Tex. App.-Texarkana 1999, no
pet.). The test for abuse of discretion is whether the trial court's decision is arbitrary or
unreasonable. Id. 

 Awards of attorney's fees in connection with breach of contract claims are governed
by Chapter 38 of the Texas Civil Practice and Remedies Code. To recover attorney's fees
under Section 38.001, the claimant must: 1) be represented by an attorney; 2) present the
claim to the opposing party or to a duly authorized agent of the opposing party; and 3)
payment for the just amount owed must not have been tendered before the expiration of
the thirtieth day after the claim is presented. Tex. Civ. Prac. & Rem. Code Ann. Â§ 38.002
(Vernon 1997). Lilly contends it is the second prong that has not been met-that Tolar
failed to present the claim to Lilly. 

 An award of attorney's fees to a plaintiff recovering on a valid claim founded on a
written or oral contract, preceded by proper presentment, is mandatory. Stewart Title
Guar. Co. v. Aiello, 911 S.W.2d 463, 473-74 (Tex. App.-El Paso 1995), aff'd in part & rev'd
in part on other grounds, 941 S.W.2d 68 (Tex. 1997); Arguelles v. Kaplan, 736 S.W.2d
782, 786 (Tex. App.-Corpus Christi 1987, writ ref'd n.r.e.); Caldwell & Hurst v. Myers, 714
S.W.2d 63, 65 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); Gerdes v. Mustang
Exploration Co., 666 S.W.2d 640, 645 (Tex. App.-Corpus Christi 1984, no writ). It is well
established that no particular form of presentment is required. Jones v. Kelley, 614
S.W.2d 95, 100 (Tex. 1981); Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 719 (Tex.
App.-Houston [1st Dist.] 1988, writ denied). Nor is there a requirement the presentment
include any mention of a sum or amount owing. See Arch Constr., Inc. v. Tyburec, 730
S.W.2d 47, 50 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.); Stuckey v. White,
647 S.W.2d 35, 38 (Tex. App.-Houston [1st Dist.] 1982, no writ). Further, recovery is
allowable even if the award is entirely offset by the opposing party's claim. McKinley v.
Drozd, 685 S.W.2d 7, 10 (Tex. 1985). 

 On March 29, 2000, Tolar, through his attorney, sent a letter to Steve Kattner,
counsel for Lilly, informing him of a potential cause of action by Tolar against Lilly and
Lilly's Bonding Service, and demanding the return of Tolar's truck. In the letter, Tolar
specifically stated:

 However, at the time Mr. Tolar paid the $1,225.00 for the bond, Lilly's
Bonding Service had him execute a Contract To Indemnify. This contract
sets forth the relationship between Rodney Tolar and Lilly's Bonding Service
with regard to the bond. This contract also sets forth your client's remedies
in the event of a bond forfeiture, none of which include repossession of
Mr.Â Tolar's truck and welding machine. Moreover, nowhere in the agreement
does Mr. Tolar agree to place his truck and welding machine up for security
in the event of a bond forfeiture. This was never the agreement.


 . . . . We demand immediate return of the truck and welding machine and will
seek compensation for any damages to those items occurring while in your
client's possession. My client will also seek compensation for lost earnings
for these months as well as damages for loss of use of the truck and any
other damages the law allows.


Lilly did not return Tolar's truck and welding unit or pay any form of compensation in the
thirty days following receipt of the letter. Tolar properly made his presentment under
Section 38.002. See Tex. Civ. Prac. & Rem. Code Ann. Â§ 38.002. 

 Lilly further contends the evidence is insufficient to show that the work by Tolar's
attorney was both reasonable and necessary. Tolar's counsel testified regarding
reasonable attorney's fees in Longview, stating that $185.00 an hour is a reasonable fee
for Longview. He further testified regarding his experience and entered into evidence his
"Statement of Attorney's Fees," and testified it accurately represents the hours he spent
on the case. This evidence is both legally and factually sufficient to show the
reasonableness of the fees. Lilly also complains because there is no evidence of the
necessity of the fees. The attorney's fees awarded in this case were awarded pursuant to
Chapter 38 of the Texas Civil Practice and Remedies Code, which contains no requirement
that attorney's fees be necessary, apart from the requirement that such fees be
reasonable. See Tex. Civ. Prac. & Rem. Code Ann. Â§ 38.001 (Vernon 1997) (a person
may recover reasonable attorney's fees); Murrco Agency, Inc. v. Ryan, 800 S.W.2d 600,
606 (Tex. App.-Dallas 1990, no writ). Apart from providing evidence of the
reasonableness of attorney's fees, Tolar was not required, under Section 38.001, to
present evidence as to the necessity of such fees. 

 Lilly also contends the trial court erred in granting attorney's fees because Tolar
failed to segregate his fees for the breach of contract claim, which allows for the recovery
of attorney's fees, from his other claims in which attorney's fees are not recoverable. 
When a plaintiff seeks to recover attorney's fees in a case in which he asserts multiple
claims, at least one of which supports an award of attorney's fees and at least one of which
does not, there must be evidence segregating attorney's fees among the various claims. 
Lesikar v. Rappeport, 33 S.W.3d 282, 317 (Tex. App.-Texarkana 2000, pet. denied). An
exception to this duty to segregate arises when the attorney's fees are in connection with
claims arising out of the same transaction and are so interrelated that their award or denial
depends essentially on the same facts. In that circumstance, segregation is not required.
Id.; Flint & Assocs. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624-25 (Tex.
App.-Dallas 1987, writ denied). Thus, a plaintiff must either segregate the fees among the
different claims or establish that the claims are sufficiently interrelated. 

 Where no objection is made to the failure to segregate attorney's fees, the error is
waived. Green Int'l, Inc., 951 S.W.2d at 389; Hruska v. First State Bank, 747 S.W.2d 783,
785 (Tex. 1988); see Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991)
(stating remand appropriate "[i]f a party refuses, over objection, to offer evidence
segregating attorney's fees among various claims or parties, and an appellate court
determines that segregation was required" (emphasis added), and providing that an
objection to failure of trial court to allocate or segregate fees in jury charge is sufficient to
preserve error); see also Tex. R. Civ. P. 274. By failing to object at trial that the attorney's
fees were not properly segregated, Lilly has waived this point of error. 

 Even if he had preserved this point for review, the record clearly shows Tolar's
counsel testified that, to the extent possible, he segregated the fees attributable to the work
done purely for the conversion claim. However, he further testified that, because the facts
were so intertwined and the claims arose out of the same transaction, it was impossible to
completely segregate the fees. 

 Tolar introduced into evidence his counsel's bill for his services for trial and
preparation for trial, which totaled $25,030.50 (excluding the damages hearing), and
Tolar's counsel testified as to the reasonableness of these charges. We hold the evidence
is both legally and factually sufficient to support the award of $25,493.00 in attorney's fees
for trial. Tolar's counsel testified that $10,000.00 and $15,000.00 were reasonable fees
for appeals to this Court and the Texas Supreme Court, respectively. The evidence is
legally and factually sufficient to support these awards. 

 In points of error twenty-six through thirty, Lilly contends there is not clear and
convincing evidence of malice, and insufficient evidence to support the award of
$25,000.00 in exemplary damages. To recover exemplary damages for conversion, the
plaintiff must prove the defendant acted with malice. Green Int'l, Inc., 951 S.W.2d at 391. 
Punitive (or exemplary) damages are levied against a defendant to punish that defendant
for outrageous, malicious, or otherwise morally culpable conduct. Transp. Ins. Co. v.
Moriel, 879 S.W.2d 10, 16 (Tex. 1994); see Tex. Civ. Prac. & Rem. Code Ann. Â§ 41.001(5)
(Vernon 1997) (defining "exemplary damages" as "damages awarded as a penalty or by
way of punishment").

 "Malice" is defined as:


 (A) a specific intent by the defendant to cause substantial injury to
the claimant; or 


 (B) an act or omission: 


 (i) which when viewed objectively from the
standpoint of the actor at the time of its occurrence involves an
extreme degree of risk, considering the probability and
magnitude of the potential harm to others; and 


 (ii) of which the actor has actual, subjective
awareness of the risk involved, but nevertheless proceeds with
conscious indifference to the rights, safety, or welfare of
others. 

Tex. Civ. Prac. & Rem. Code Ann. Â§ 41.001(7) (Vernon 1997). Malice may be implied from
the knowing conversion of another's property when the defendant knew or should have
known it had no legal right to the property. Transfer Prods., Inc. v. Texpar Energy, Inc.,
788 S.W.2d 713, 715 (Tex. App.-Corpus Christi 1990, no writ); First Nat'l Bank v. Brown,
644 S.W.2d 808, 810 (Tex. App.-Corpus Christi 1982, writ ref'd n.r.e.). 

 There is nothing in the record to indicate Lilly had any right to the truck after Tolar
reclaimed it from having pawned it. Tolar pawned the truck twice and reclaimed it each
time, having paid his debt in full. The only other contact between Tolar and Lilly was the
bond agreement. Nothing in the record at the time the trial court rendered judgment
reflected any agreement regarding the truck and the bond issuance. Lilly contends in his
motion for new trial he believed he had a lawful right to the truck because of a letter from
the Texas Consumer Credit Commissioner stating he may have a security interest in the
truck. However, this evidence was not before the trial court when it made its findings. In
determining the sufficiency of the evidence, we look only to the evidence before the trial
court at the time it rendered judgment. See Merrell Dow Pharms., Inc., 953 S.W.2d at 711-12. We hold the evidence was both legally and factually sufficient to support the trial
court's finding of malice and award of punitive damages. 

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: August 6, 2002

Date Decided: August 22, 2002


Do Not Publish

1. Amended by Act of May 17, 1999, 76th Leg., R.S., ch. 414, Â§ 1.01, 1999 Tex. Gen.
Laws 2639, 2660-62.
2. Amended by Act of May 17, 1999, 76th Leg., R.S., ch. 414, Â§ 1.01, 1999 Tex. Gen.
Laws 2639, 2660.